Central State Bank, Appellee, v. M. Ford et al., Appellants.

GUARANTY: Failure to Record and Enforce Security. The plea of a guarantor of *payment* that he was released because the note holder had failed to record and enforce a chattel mortgage security cannot prevail: (1) When the note holder was never in actual possession of the mortgaged property; (2) when the chattel mortgage was on the product of a *going concern*, and all sales were made to customers in the regular course of retail business; and (3) when the chattel securities were practically intact when the guaranty matured, but the guarantor failed to discharge his obligation and thereby secure the benefit of subrogation.

Weaver and Arthur, JJ., dissent.

*Appeal from Linn District Court.*—Milo P. Smith, Judge.

April 4, 1922.

Rehearing Denied December 15, 1922.

ACTION at law upon a guaranty. The defendant pleaded a general denial, and false representations inducing his signature. He pleaded also that the plaintiff had wrongfully relinquished certain securities held by it, to the detriment of the defendant as guarantor, and that he was thereby released from his guaranty. At the close of the evidence, there was a directed verdict for the plaintiff. The defendant appeals.—*Affirmed.*

*Deacon, Good, Sargent & Spangler,* for appellants.

*Barnes, Chamberlain & Hanzlik* and *George F. Buresh,* for appellee.

EVANS, J.—I.  The guaranty sued on was as follows:

"Cedar Rapids, Iowa, March 4, 1914.
"For value received, I hereby guarantee the payment of a note dated at Cedar Rapids, Iowa, March 4, 1914, for $2,500 due 15 days after date, payable to the Central State Bank or order, at its banking house at Cedar Rapids, Iowa, with interest payable quarterly at the rate of six per cent per annum, after date until paid, the said note being signed by Matt J. Miles, at maturity or any time thereafter, with attorneys' fees if suit be instituted hereon waiving demand, notice of nonpayment and protest. The above note is further secured by a bill of sale signed by Matt J. Miles to Ed. Zbanek on all brick now located at the plant in the Cedar Rapids Brick Company of Cedar Rapids, Iowa.

"M. Ford."

The defendant admitted of record on the trial that he executed and delivered to the plaintiff the foregoing guaranty. The issue of general denial is, therefore, out of the case. There was no evidence of fraud or deceit on the part of the plaintiff, and that issue may be ignored. The real complaint of the defendant is directed to the alleged fact that the plaintiff, through neglect, failed to realize upon the security which it held, in the form of a bill of sale purporting to cover 600,000 brick.

Some dispute is presented in the record as to whether the bill of sale was given by Miles for the purpose of protecting the

plaintiff bank, or whether it was given for the purpose of protecting the guarantor. The position of the plaintiff is that it relied solely upon the guaranty of the defendant Ford, and that the execution of the bill of sale by Miles was intended for the protection of the guarantor, Ford; whereas the contention of the defendant Ford is that the bill of sale was made, not for his benefit, but for that of the bank. In our judgment, the attempted distinction is a fruitless one. If the bill of sale had any value, it necessarily operated to the protection of both parties. It extended its protection primarily to the plaintiff and secondarily to the defendant. Concededly, the bill of sale was given as security only. It was the equivalent of a chattel mortgage. The plaintiff never had actual possession of the property described therein. The position of the defendant is that the plaintiff should have enforced the security, and applied the proceeds upon the debt. Its complaint is that the plaintiff failed to record the bill of sale, and thereby lost the security, in that the brick therein described were all sold and delivered to other parties, and thereby wholly dissipated. Special emphasis is laid upon the failure of the plaintiff to record the bill of sale. It will be readily seen that the pivotal question in the case is: What was the legal duty of the plaintiff to the guarantor in relation to such security? Was it bound affirmatively to enforce the same? Did its mere passive omission to enforce the same operate as a release of the guarantor in whole or in part? There was some evidence that Miles requested the plaintiff not to record the bill of sale, and that the plaintiff acquiesced in such request. Such fact is urged as a ground of release of the guarantor. Miles was the mayor of the city, and was a candidate for re-election, at the time of this transaction. Ford was a paving contractor. It was deemed inadvisable by both of them that their names should appear on the same instrument. This is the plaintiff's purported explanation of the somewhat unusual form and method of the security.

It is the general rule of law that a note holder owes no affirmative duty of diligence to a guarantor of payment, as distinguished from a guarantor of the collection. On the other hand, the note holder may not affirmatively relinquish securities which have come into his hands or control. It is sometimes a

difficult question, in a given case, to determine whether the conduct of the note holder should be deemed passive omission or active relinquishment. We inquire first whether the failure to record the mortgage operated to release the guarantor. A kindred question is: Was the guarantor prejudiced by the failure to record? Under the facts of this case, the answer to the second question answers both. The note was executed on March 4th, and became due on March 19th. The mortgaged brick was a part of the stock of a going concern. What little evidence there is on the question of sales is to the effect that they were made in the regular course of the retail business, and made to trade customers. In such a case, consent to the usual and ordinary sales at retail is implied until the mortgage is enforced and the going concern is stopped in its trade under the power conferred thereby. Nothing of this kind was done, nor does it appear that anything of this kind was contemplated by any of the parties,—at least, prior to the maturity of the note. Ordinary trade customers, therefore, purchasing at retail in good faith, were not affected by the mortgage. This would be true whether the mortgage were recorded or unrecorded. The mortgage is upon the corpus of the stock, and attaches to its changed form in the ordinary course of trade. No other rule would permit a going concern to mortgage its stock of goods at all, without ceasing to do business. Inasmuch as there is no evidence herein of any dissipation of the stock prior to the due date of the note, in any manner except as here indicated, the guarantor suffered no prejudice by the mere failure to record the bill of sale prior to March 19th.

II. The only direct evidence in the record that any sales were made on or before March 19th was that of defendant's witness Davidson, who entered the employ of the brick company on March 18th, and on that day loaded a car of brick comprising 24,000. This car was shipped on the following day to a customer. This witness testified also that at that time there were left in the yards from 400,000 to 500,000 brick. The defendant's testimony also shows the value to be $7.00 a thousand. It appears, therefore, indisputably, from defendant's own testimony, that there were in the yards on the date of the maturity of the note not less than 400,000 bricks. It was the duty of the defendant

on that date to have paid the note. If he had done so, he would thereby have become subrogated to all the rights of the plaintiff in the security, and could have protected himself. In *Hendryx v. Evans*, 120 Iowa 310, much relied upon by appellant, we said:

"The surety upon the maturity of the debt ought to pay it, and if he neglect to do so, thereby putting himself in a position to protect his own interests, he is quite as much at fault as the creditor in failing to enforce the claim."

The substantial dissipation of the brick, therefore, occurred after the maturity of the note, and while the guarantor was neglecting to pay it, and was himself neglecting whatever interest he had in the security. The broad rule of law involved herein is succinctly set forth in *City of Maquoketa v. Willey*, 35 Iowa 323, 328, as follows:

"Our first inquiry relates to the obligation and rights of the principal and security. The law does not require the principal to institute a suit against the debtor, or to pursue an action of indebtedness with diligence, and to call to his aid all the remedies provided by the law. If he has brought suit, he may stop short in its prosecution before judgment, or if he has recovered judgment, he may fail or refuse to sue out execution, and, indeed, if execution has been issued, he may cause its return without a levy. All this may be done even though judgment, execution, and levy would have resulted in the collection of the debt against the principal debtor; the security is not thereby discharged. The creditor, however, cannot relinquish any hold he has acquired upon the property of the debtor without resorting to the proper proceedings to make therefrom the debt. And this rule is alike applicable if the property has been voluntarily placed in the hands of the creditor, or he has acquired a lien thereon by proceedings at law. This is unquestionably the rule of the authorities. They will be found collected and discussed in 3 Leading Cases in Equity (Hare & Wallace's Notes, p. 552, *Rus v. Berrington*), and 2 Am. Leading Cases 260 (Hare & Wallace's Notes to *Pain v. Packard* and *King v. Baldwin*). See upon this point *Chambers v. Cochran & Brock*, 18 Iowa 159. This rule is well founded upon the equitable doctrine that he who, by his willful act, causes a loss, ought to endure its conse-

quences, and not transfer its effects to an innocent party. The creditor, having in his hands property to secure the debt, voluntarily placed there by the principal debtor, would not be permitted to relinquish it or appropriate it to other purposes. By such an act the property would be lost, so far as the satisfaction of the debt is affected. The case is not different if the property should come to the hands of the creditor by his own act, as through the institution of legal proceedings. In either case, it is plain that equity and fair dealings toward the surety demand that he appropriate the property to the payment of the debt.''

What stands out clearly from the defendant's own showing in this case is that, at and after the maturity of the note, and at the time and after the defendant had defaulted in performing his guaranty, he had the ample protection of the bill of sale, unaffected by any previous failure of the plaintiff either to record or to enforce; and that subsequent delay either to record or to enforce is chargeable to himself alone. This is sufficient of itself to sustain the order of the trial court in directing a verdict for the plaintiff.

III. Up to this point, we have disregarded one feature of the case which has been somewhat discussed in the briefs. According to the contention of plaintiff, the brick mortgaged by Miles in his bill of sale was the property of the Cedar Rapids Brick Company, a copartnership, consisting of himself and Cox. The proceeds of the sales were deposited in another bank, and applied to the payment of partnership debts. If the truth of this contention and fact be conceded, then the bill of sale was worthless from the beginning. Some testimony, however, was introduced by the defendant, tending to show that Miles was the owner of the brick. This consisted of the testimony of Miles himself, to this effect:

''I was the owner of the company, of the Cedar Rapids Brick Company. It was a trade name, and not incorporated.''

As against this, it appeared that Miles himself had verified an answer for such company, wherein he alleged that the company was a partnership, consisting of himself and Cox. It appears without dispute also that, prior to March 4, 1912, Miles and Cox and Shaw, their superintendent, had organized a cor-

poration, with themselves as the only stockholders, for the purpose of taking over the property of the Cedar Rapids Brick Company. They did take it over, on or about April 25, 1914, by a conveying instrument executed by Miles and Cox. It is the contention of the appellant that there was sufficient conflict in the evidence to take this question to the jury. In the light of the other features of the record which we have already set forth, the question is quite immaterial. Whichever way the fact were found, it could not change the result.

It is our unavoidable conclusion that the trial court properly directed a verdict for the plaintiff. Its judgment is, accordingly,—*Affirmed.*

Stevens, C. J., Preston, Faville, and De Graff, JJ., concur.

Weaver and Arthur, JJ., dissent.