WALTER P. MILLER et al., individually and representing class of preferred stockholders of Mahaska Industries, Inc., appellees, v. P. J. GEERLINGS, appellant.

No. 51300.

(Reported in 128 N.W.2d 207)

570

May 5, 1964.

Patrick J. Life, of Oskaloosa, and Phil Gross, of Sumner, for appellant.

Bray, McCoy & Faulkner, of Oskaloosa, for appellees.

SNELL, J.—This is a class action by plaintiffs individually and in behalf of holders of preferred shares of capital stock of a corporation. Plaintiffs asked judgment and declaration of rights against a guarantor who had defaulted.

The defendant filed no answer. No testimony was offered. The matter was before the trial court and is before us on the petition, various motions, resistances, supporting affidavits, findings and rulings.

Pursuant to rule 102, Rules of Civil Procedure, we accept as established facts pleaded and not denied. We also accept the admissions of defendant in his affidavit attached to his resistance to motion for summary judgment. We determine the rights of the parties from the premise they themselves created and tendered.

Defendant, P. J. Geerlings, was the organizer and principal stockholder of Mahaska Industries, Inc. He sought financial assistance from plaintiffs and the shareholders "represented by them in this action and proposed to cause to be issued to them by said corporation preferred shares of its capital stock * * * *which would entitle them to a preferred dividend of seven percent (7%) per annum, payable semi-annually* on June 1st and December 1st of each year after the date of issuance *and if they would purchase 300 shares of said preferred capital stock he would personally guarantee the payment of said dividends* * * * and that the offer so made was accepted by them." (Emphasis supplied.)

Following this representation and acceptance defendant executed and delivered a written instrument referring to the organization of the corporation, the issuance of 7 percent cumulative preferred stock and the offer for sale. It then provided:

"WHEREAS, the undersigned, P. J. Geerlings, is desirous of guaranteeing personally the payment of dividends on said pre-

ferred stock and payment of par value thereof on dissolution or liquidation of the corporation;

"Now, THEREFORE, in consideration of the agreement of any person, firm or corporation hereinbefore or hereinafter made to purchase shares of the seven percent (7%) cumulative preferred stock of Mahaska Industries, Inc., P. J. Geerlings does hereby guarantee that in the event the corporation does not pay seven percent (7%) dividends called for in said preferred stock semiannually in accordance with the terms and provisions of said preferred stock, or said corporation on liquidation or dissolution does not pay in full the par value of said preferred stock, he will pay said dividends and/or said par value on said liquidation or dissolution within ten (10) days after the same become due. * * *."

A copy of the guaranty agreement was attached to the petition. A copy of the stock certificates as issued and delivered was attached to the petition. Each certificate provided that the holder was entitled "to receive a preferential dividend of seven percent (7%) per annum, payable semiannually on the first day of June and on the first day of December of each year, after the date of issuance, to be paid out of the net earnings and undivided surplus of the corporation. * * * The preferred stock shall be subject to redemption at any time at the option of the Board of Directors of the company upon the payment of $100 per share and accumulated dividends."

The written guaranty agreement and the stock certificates were dated February 11, 1958.

Mahaska Industries, Inc. has paid no dividends. Defendant paid to holders of preferred stock the semiannual payments up to and including the one due June 1, 1962, "in accordance with said guaranty agreement."

Nothing has been paid since that date. This action was started in March 1963.

Plaintiffs sought a decree declaring defendant liable for the payment of dividends due and payable on December 1, 1962, and to become due on June 1 and December 1 of each year thereafter if not paid by the corporation within 10 days after the same become due. Plaintiffs also asked for declaration of right

to judgment for the par value of the preferred shares on liqui-dation or dissolution within 10 days thereafter. Judgment in praesenti for accrued and unpaid dividends was sought, to-gether with judgment for payments accruing in the future.

Defendant filed Motion to Dismiss, Motion for Production of Books and Papers and Motion to Strike. Each motion was overruled and no error is claimed nor appeal taken from these rulings.

On July 9, 1963, plaintiffs filed Motion for Summary Judg-ment. The motion appears to be in proper form and was sup-ported by affidavit.

Defendant filed Resistance to Motion for Summary Judg-ment. In his resistance defendant alleged that any agreement of his was conditional. He then denied specifically or on infor-mation and belief each allegation in plaintiffs' motion. The motion then said:

"Defendant contends that under the provisions of Exhibits A & B, incorporated by reference in the plaintiffs' petition, defendant is liable, if at all, to pay cumulative preferred dividends of Mahaska Industries, Inc., only to the extent net profits and/or undivided surplus of the said Mahaska In-dustries, Inc., since the date of incorporation is less in the aggregate than to cumulative preferred dividends which in the aggregate become due in December, 1962 and June, 1963."

In the affidavit attached to defendant's resistance defendant said:

"I further contend that under the provisions of Exhibits A and B, incorporated by reference in the plaintiffs' petition, I am only liable to pay cumulative preferred dividends only to the extent net profit and/or undivided surplus of said Mahaska Industries, Inc., since the date of incorporation is less in the aggregate than the cumulative preferred dividends which have in the aggregate become due in December, 1962, and June, 1963.

"Under the terms of the agreement entered into by and between Mahaska Industries, Incorporated, and myself and other stockholders there was and is provided and a part of said agreements that Mahaska Industries shall pay cumulative pre-

ferred ·dividends if there is any net profit and/or undivided surplus of said corporation.

"Upon information and belief and as a member of the Board of Directors of said corporation this affiant is advised that the Mahaska Industries, Inc., is in a position to pay said dividends. That within the last year they have shown a net profit of $26,000."

From his resistance and affidavit it is apparent that defendant denies liability only in the event Mahaska Industries, Inc. has the money with which to pay the obligation he has guaranteed. He recognized his obligation and paid to and including June 1, 1962. He does not deny his future obligation to pay if the corporation cannot pay. He merely claims that Mahaska Industries, Inc. is in a position to pay and has shown a net profit of $26,000 within the past year. Defendant says plaintiffs have failed to show that they have met conditions precedent to his liability.

To what extent, if at all; the claimed profits were absorbed by ·prior losses does not appear.

On July 19, 1963, defendant moved to join Mahaska Industries, Inc. as a party defendant. The motion · urged the obligation of the corporation to pay from net profits and undivided surplus. It urged that the corporation was an indispensable party, that its interests were not severable and the corporation should be a party if complete relief was to be accorded between those already parties. Following the submission of a resistance and defendant's motion to strike the motion was overruled.

Finally after submission and consideration plaintiffs' Motion for Summary Judgment was sustained. On July 31, 1963, judgment entry was filed. Judgment for the amount of dividends to date was entered and plaintiffs were awarded declaratory judgment for future payments not paid by the corporation.

I. As we stated in the beginning we have no testimony to consider. We have no answer by defendant. We have the uncontroverted allegations of plaintiffs' petition, the exhibits attached thereto and the position of defendant as disclosed by his own affidavits. "* * * we are limited to the record as made

in the lower court, and by the errors assigned here." Best v. Yerkes, 247 Iowa 800, 811, 77 N.W.2d 23, 30, 60 A. L. R.2d 1354. It is not for us to write a new contract for the parties beyond their intent or contemplation.

Two errors are assigned i.e. (1) That the court erred in overruling defendant's motion to add Mahaska Industries, Inc. as a party defendant, and (2) That the court erred in sustaining plaintiffs' Motion for Summary Judgment.

██ II. It was within the trial court's discretion to refuse to bring in a new party defendant.

Rule 33(b), Rules of Civil Procedure, provides:

"Against new parties. When a defendant to a petition, cross-petition or counterclaim will, if held liable thereon, thereby be entitled to a right of action against one not already a party, he may move to have such party brought in, to the end that the rights of all concerned may be determined in one action. *Such motion must be supported by affidavit.*" (Emphasis supplied.)

No supporting affidavit appears. Defendant's motion does not comply with the rule. We consider it briefly and only as a matter of grace.

██ A motion to bring in a third-party defendant under rule 33(b) is addressed to the trial court's sound judicial discretion. The rule does not require the trial court to sustain such a motion. The exercise of the trial court's discretion is not reviewable for the purpose of substituting our discretion for that of the trial court. It is only the abuse of discretion that is reviewable on appeal. Best v. Yerkes, supra, loc. cit. 810. The situation is carefully analyzed and discussed in Best v. Yerkes, supra, loc. cit. pages 810–817 of 247 Iowa. Repetition here is unnecessary.

██ In the case before us, under the suggestion in Best v. Yerkes, supra, Mahaska Industries, Inc. might have been brought in as a party defendant. Such a ruling might have obviated what may be another lawsuit between defendant and Mahaska Industries, Inc. That possibility does not make the corporation an indispensable party. Its presence was not necessary for determination of the claim of plaintiffs against defendant. No rights or liabilities of the corporation were being enhanced or

impaired. No claim defendant might have against the corporation was in jeopardy. If defendant had or has a claim against the corporation he still has it and may bring an action for the enforcement thereof. O. K. Door Co. v. Lincoln Engineering Construction Co., 174 Neb. 682, 119 N.W.2d 153, 156.

Although difficult, involved and complicated issues are occupational hazards of trial judges and cannot be avoided, the issues sought to be litigated by defendant involved new issues such as accounting, subrogation and other matters of no concern to plaintiffs. We cannot say that the trial court abused its sound judicial discretion in denying the motion to join. It may be that the dispute between defendant and the corporation, if one exists, can be better resolved in a separate action.

■ III. In argument defendant says, "the Guaranty Agreement should be construed according to the intention of the parties as disclosed by the language employed and the surrounding circumstances." Defendant cites Buser v. Grande Avenue Land Co., 211 Iowa 659, 234 N.W. 241, and Shively v. Globe Manufacturing Co., 205 Iowa 1233, 219 N.W. 266.

We agree with this statement of the law and with the cited cases.

■ What was the intent of the parties and what are the surrounding circumstances?

The intent of the parties is clearly expressed by the written undertaking of defendant wherein he says:

"WHEREAS, the undersigned, P. J. Geerlings, is desirous of guaranteeing personally the payment of dividends on said preferred stock and payment of par value thereof on dissolution or liquidation of the corporation."

This is followed by the undenied statement of plaintiffs that the offer so made was accepted by them. The preferred stock bought because of this guaranty was issued and for five years defendant paid the semiannual dividends apparently without complaint. Whether Mahaska Industries, Inc. had net income or undivided surplus or operated at a loss during that time does not appear. Defendant placed his own construction on his contract and paid. Plaintiffs bought stock following defendant's promise to pay. As long as plaintiffs got their money

they had no complaint. Under the assurances inducing their purchase plaintiffs have a right to expect their money without delay and without successive lawsuits.

On the basis that the corporation is now prosperous and possessed of funds defendant (by motion and affidavit only) seeks relief from his guaranty to the extent of the corporation's available funds, i.e. profits or undivided surplus. Nowhere has defendant denied liability if the corporation cannot pay. All defendant has ever claimed is that if the corporation has sufficient net profits or undivided surplus to pay 7 percent on the preferred stock the dividend should be paid, thus relieving defendant of his obligation to pay. The only difference between the parties is whether defendant's liability is primary or secondary in the event the corporation has the money with which to pay.

IV. We note rather strange, incongruous and apparently in the opinion of defendant innocuous wording in the guaranty and the stock certificates. The guaranty agreement says, "P. J. Geerlings does hereby guarantee that in the event that the corporation does not pay seven percent (7%) dividends called for in said preferred stock semiannually in accordance with the terms and provisions of said preferred stock * * * he will pay said dividends * * *."

The stock certificates provide that each holder is entitled "to receive a preferential dividend * * * payable semiannually * * * to be paid out of the net earnings and undivided surplus of the corporation * * *."

From these words it might be argued that the corporation only agreed to pay when there were net earnings and undivided surplus available and the defendant only guaranteed payment when the corporation could so pay. To so construe the guaranty would completely disregard the inducement for the purchase of the stock, the express intent of the parties, the only purpose of the agreement, the parties' own interpretation thereof and defendant's position and only claim in this action. To limit the defendant's guaranty to times when the corporation can pay would completely destroy its value and effectiveness except on liquidation of the corporation.

The designation of the fund from which the corporation should pay was of no particular significance if the payments were to be dividends as distinguished from interest on an obligation. If the payments were to be considered dividends in the commonly understood meaning of the word there was no source of payment by the corporation except net earnings or undivided surplus. The term "dividend" as applied to corporations in a legal sense and as generally understood in common usage means earnings or profits which are distributed in proportion to the shares of stock owned by the several stockholders. See Volume 13, Words and Phrases, Dividend, page 72 et seq. There may be earnings or profits without a declaration of dividend therefrom but a dividend in the true sense is dependent on accumulated profits. In the case before us payments by the corporation from funds other than net earnings or undivided surplus would be a distribution of capital or liquidating dividends.

The words in the stock certificates designating the source of corporate dividends were of minimal importance and should not constitute a loophole to defeat or delay performance of defendant's obligation.

It is not for us to place upon the agreement and understanding of the parties a strained, unnatural and destructive construction apparently never thought of and certainly never claimed by anyone.

V. There is no claim of ambiguity in connection with the wording referred to in Division IV, supra. For five years the parties placed their own construction thereon. The parties are in accord as to the meaning except as to defendant's denial of primary liability when the corporation can pay.

When defendant stated in his written guaranty that he was "desirous of guaranteeing personally the payment of dividends" he certainly had reason to suppose that purchasers of stock would expect to get their money without delay and from him within ten days.

Section 622.22, Code of Iowa, provides:

"Understanding of parties to agreement. When the terms of an agreement have been intended in a different sense by the

parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it."

For five years the parties treated the obligation as a guaranty of payment. If there is a variance between the unlimited express intent of the parties and the limited wording of the stock certificates designating the fund from which the corporation should pay we adopt the intention of the parties as the contract.

■■ It is well settled that the primary rule of construction is, if possible, to give effect to the intention of the parties. Unfair or unreasonable results will, if possible, be avoided. The practical construction placed upon an ambiguous or indefinite contract by the parties thereto will usually be adopted by the courts.

See Darnall v. Day, 240 Iowa 665, 670, 671, 37 N.W.2d 277, and authorities cited therein.

■ VI. The real issue between the parties is whether defendant's guaranty is a guaranty of payment or a guaranty of collection.

The petition alleges, and defendant does not deny, that demand for payment has been made upon the corporation and that dividends have not been paid. The issue is thus reduced to the question of how far must plaintiffs go in exhausting remedies against the corporation before proceeding against defendant.

Defendant relies heavily on pronouncements in First National Bank of Shenandoah v. Drake, 185 Iowa 879, 171 N.W. 115.

In that case the defendant was a guarantor on a note. The statute of limitations had run so that any claim against the principal was barred. Under what are now sections 541.193 and 541.121, Code of Iowa (a part of the Negotiable Instruments Law) it was held that defendant was only secondarily liable and the defense of the statute of limitations available to the principal released the guarantor. The case discusses the distinction between the liability of a guarantor and a surety and cites cases wherein a guarantor was only secondarily liable. A significant statement appears distinguishing the situation from the case be-

fore us. It was said that a guarantor is one who becomes bound for a prior or collateral contract upon which there principal alone is bound.

In the case at bar defendant was the organizer and principal stockholder of the corporation. As promoter he was the one who made the original promise and toward whom the benefits moved. It was defendant's offer that was accepted. He was not a mere guarantor who becomes bound for a prior or collateral contract. He not only personally guaranteed the payment of dividends but said that "he will pay."

Cownie v. Dodd, 167 Iowa 627, 149 N.W. 904; Schaffer v. Acklin, 205 Iowa 567, 218 N.W. 286, and Fidelity Savings Bank v. Wormhoudt Lumber Co., 251 Iowa 1121, 104 N.W.2d 462, are more nearly in point.

In Cownie v. Dodd, supra, the factual background was similar in that plaintiff sued on a guaranty of interest on preferred stock. It was held that the guaranty was one of payment and at most the holder was not bound to do more than make demand on the principal.

Schaffer v. Acklin, supra, was a suit on a written instrument guaranteeing payment of a note. The case notes the fundamental distinction between a guaranty to pay and one to collect. It was held that a guaranty to pay is absolute. This was quoted from Corpus Juris.

" 'As a general rule, a guaranty of the payment of an obligation of another is an absolute undertaking, imposing liability upon the guarantor immediately upon the default of the principal debtor, and regardless of whether any legal proceedings or steps are taken to enforce the liability of the principal debtor, or whether notice of the default is given to the guarantor, and regardless of the solvency or insolvency of the principal debtor.' "

The cases cited in the opinion also hold that a guaranty of payment is absolute.

In Fidelity Savings Bank v. Wormhoudt Lumber Co., supra, suit was on an "Endorsement Guarantee. To be paid in accord with contract * * *." Among other defenses defendant alleged that plaintiff had permitted the diversion of funds to the detriment of defendant. In discussing the law of guaranty we said:

"But we have held that the guarantee owes no affirmative duty of diligence to the guarantor of payment. Central State Bank v. Ford, 194 Iowa 904, 906, 187 N.W. 476, 478; Schaffer v. Acklin, 205 Iowa 567, 572, 218 N.W. 286, 288; Davenport v. Mullins, 200 Iowa 836, 839, 205 N.W. 499, 500. In Fuller v. Tomlinson Bros., 58 Iowa 111, 112, 12 N.W. 127, 128, we said that even negligence of the guarantee does not discharge a guarantor; and this statement was quoted with approval in Schaffer v. Acklin, supra. So the allegations that plaintiff 'permitted' the disbursement of the funds were immaterial and should have been stricken." (Loc. cit. 1126, 1127)

VII. We hold that defendant's agreement was a guaranty of payment. There was no duty requiring plaintiffs to exhaust their remedy against Mahaska Industries, Inc. Defendant was and is obligated to pay.

The trial court was right.

The case is—Affirmed.

GARFIELD, C. J., and PETERSON, THORNTON, MOORE, and STUART, JJ., concur.

LARSON, HAYS and THOMPSON, JJ., dissent.

LARSON, J.—I respectfully dissent from the holding of the majority that the defendant, P. J. Geerlings, absolutely and unconditionally guaranteed to pay holders of preferred stock a seven percent (7%) semiannual dividend within ten days after June 1 and December 1 of each year. Such was not the undertaking expressed by the language used in the agreement between the parties reduced to writing in Exhibit A.

Although the majority freely admit "there is no claim of ambiguity", they spend most of their time discussing what they consider significant circumstances outside the instrument to determine the intent and beliefs of the parties concerning the meaning of the contract. The majority consider the resistance and affidavit filed, the "uncontroverted" allegations of the petition, the surrounding circumstances, and the parties' alleged interpretation of the contract. Thus while saying the contract is not ambiguous, the majority indicate that it is, by resorting

582

to matters far outside the writing. They even draw improper inferences from outside matters, one of which I shall later point out.

I. I assumed the rule too well settled to require citation of authority that, where such a guaranty clause is clear-cut, concise and unambiguous, the wording of the contract must control; that it is only where the wording of the contract is ambiguous, or susceptible of two or more constructions, that the situation of the parties and the circumstances surrounding the transaction, together with the conduct of the parties in relation thereto, must be considered in ascertaining the intentions. Tucker v. Leise, 201 Iowa 48, 50, 206 N.W. 258; Sears, Roebuck and Co., Inc., v. Poling, 248 Iowa 582, 589, 81 N.W.2d 462, and citations; 12 Am. Jur., Contracts, section 229; 17 C. J. S., Contracts, section 294.

The general rule governing the authority of courts to construe written instruments has always been that if the language, given its plain and rational meaning, is precise and free from ambiguity, no more is necessary than to apply to the words used their natural and ordinary meaning in connection with the subject considered. Case v. Olson, 234 Iowa 869, 873, 14 N.W.2d 717, and cases cited. We have repeated many times the statement that we are not permitted to write into agreements words which are not there, nor delete from agreements words that are there. Thus, if the meaning of the language used is clear, there is no room for construction and the courts are not permitted to search for its meaning beyond the agreement itself.

The important language of the guaranty agreement which is being considered is as follows: "* * * [the defendant] does hereby guarantee that in the event that the corporation does not pay seven percent (7%) dividends called for in said preferred stock semiannually *in accordance with the terms and provisions of said preferred stock,* * * * he will pay said dividends * * * within ten (10) days after the same become due." (Emphasis supplied.)

The emphasized language cannot be read out of the agreement. It is a part of the agreement; it is *a condition;* it means

that the terms and provisions of the preferred stock must be considered in determining the liability of the defendant. It conditioned guarantor's undertaking. The corporate undertaking found in the preferred stock certificate, Exhibit B, provides for 7 percent preferred dividends, payable semiannually, "to be paid out of the net earnings and undivided surplus of the corporation, * * *. No dividends shall be declared on common stock until *all* dividends on preferred stock have been paid." (Emphasis supplied.)

As I see this guaranty, it is clearly a promise to answer for the performance of the duty of another when the other defaults on its obligation. Defendant promised to pay the semiannual dividends on June 10 and December 10 *if* under its stock certificate undertaking the corporation was obligated to do so; in other words, if the corporation had net earnings and undivided surplus from which to pay these dividends. I fail to see how the language used in the guaranty can mean anything else without reading out the words "in accordance with the terms and provisions of said preferred stock."

II. As generally understood, "a contract of guaranty is an obligation in form and substance to answer for another's default. It is collateral, secondary and expressly conditional upon breach by the principal debtor. The debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation. Although the same consideration (of detriment to the promisee creditor) may support both the promise of the guarantor and of the principal debtor, yet they are independent obligations." See Simpson on Suretyship, Hornbook Series, 1950, section 6, page 10. Here the guaranty is not one of collectibility, i.e., that defendant will pay these dividends on those dates, but is conditional in the sense that it must appear that the principal's obligation is in fact due and payable and that it is in default, before there is a cause of action against the guarantor.

Since the trial court declared on this contract, and apparently plaintiffs asked this relief in addition to the action to recover on presently-due dividends, I would hold: Defendant's obligation to pay future semiannual dividends within ten days after they become due, arises only when it affirmatively appears

that the corporation is liable to pay its preferred stockholders these dividends and defaults in that obligation.

It must be borne in mind the second half of this guaranty provides another obligation not dependent upon the corporation's default. It provides the defendant guarantees that if the "said corporation on liquidation or dissolution does not pay in full the par value of said preferred stock, he will pay said [accumulated] dividends and/or said par value on said liquidation or dissolution * * *." This itself is a broad and comprehensive guaranty and not at all unreasonable so far as plaintiffs are concerned. Guaranteeing full return on one's investment and all accumulated dividends in the future is not an insignificant or flimsy inducement, as the majority infer. See F. D. I. C. Few guaranties are so generous, broad and all-inclusive.

III. Next, let us briefly examine the circumstances which the majority feel are persuasive of the parties' intent if the agreement is ambiguous. In the first place, they attach great significance to the fact that defendant had paid semiannual dividends during the past five years. Clearly, there is no compelling inference that in doing so he admitted present liability therefor. It is just as reasonable to conclude that he was aware of his eventual liability for all *accumulated dividends,* plus par value of the corporate stock in case of liquidation or dissolution, and he would avoid interest and a heavy obligation if the corporation failed, by satisfying dividend liabilities as they accrued. I can find therein no admission of the alleged obligation under this guaranty. The corporation was young and its first few years would have been the uncertain ones. Defendant maintained he should be reimbursed by the corporation for those past amounts paid, and attempted to join it in this action. If it is true, as he asserts, that the corporation now has over $26,000 in net earnings and undivided surplus, it seems he may recover from the corporation in a separate action.

I find no unconditional admissions of liability by defendant in this record. In fact, in his resistance to the motion for a summary judgment, he specifically claims the contract was only a conditional one. The fact that he may misconceive that condition should not alter its legal effect. He further asserts the case

is not one in which the summary judgment could be used. Can these affirmations be ignored? We thought not in Eaton v. Downey, 254 Iowa 573, 118 N.W.2d 583, to which we shall later refer.

IV. If so much extrinsic evidence is to be considered to develop the parties' intent here, then the court's right to grant summary judgment must be questioned.

To understand this issue, it is necessary to consider the method of decision used in the district court. After plaintiffs started the action defendant moved to strike, to dismiss, and for the production of books and papers. All were overruled, and a week later plaintiffs moved for a summary judgment. Eight days later a resistance was filed, and less than two weeks later the court sustained the motion for summary judgment, and judgment was entered the following day. An appeal followed.

We must first remember that the summary judgment under our rules can be used in only limited types of cases.

Rule 237, Rules of Civil Procedure, provides: "Summary judgment may be entered in an action, upon any claim therein, which is either: (a) To recover a debt, or some other money demand which is liquidated, with or without interest arising on a negotiable instrument, or on a recognizance, * * * or on any contract, express or implied, except quasi contract; or * * * (c) On a guaranty of a debt, or of some other claim that is liquidated; * * *."

As stated, defendant's resistance to the motion for summary judgment specifically claimed this was not a case where summary judgment could be used; that the contract involved was only a conditional one. Thus, if the contract was susceptible of such construction, as the majority seem to indicate, questions of fact as well as law must be involved, and until those issues are fully tried, no judgment would be proper. I, therefore, seriously question whether under the majority's method of consideration, either summary judgment or declaratory judgment was proper.

One of the troublesome problems in contract law, of course, is that of determining whether interpretation is a matter of fact or law. See Corbin on Contracts, Volume 3, section 554. Clearly,

if interpretation here is a question of fact, the issue should have been submitted to a jury if either party requested it. Rule 177, R. C. P.; Becker v. Town of Churdan, 175 Iowa 159, 157 N.W. 221. On the other hand, if this is a question of law, then it should be decided by the court. But it should be decided by the court only after having received and considered *all* the evidence which is relevant.

Neither the trial court nor we should rule on this question on the sketchy record as to surrounding circumstances which we have before us. If the construction of this guaranty is not to be confined to the language used, the parties should be given a fair opportunity to introduce evidence on the issue of intent. How can the court declare its meaning without such evidence? Utica Carting Storage & Contracting Co. v. World Fire & Marine Ins. Co. (1950), 277 App. Div. 483, 486, 100 N. Y. S.2d 941, 944, 36 A. L. R.2d 500, 503, was decided under New York Rule 113, which is very similar to our rule 237, R. C. P. The court therein stated: "The intent of the parties is to be ascertained from the language employed if it is clear and unambiguous * * *. But where an ambiguity is present the contract must be construed in accordance with well established rules. * * * Our view is that an ambiguity is present * * * and that it should not be resolved against the plaintiff on a motion for summary judgment."

So it would be my conclusion that if the majority insist on considering the resistance and affidavit filed, the "uncontroverted" allegations of the petition, and such farfetched inferences as they draw from the surrounding circumstances, it was an error not to permit the litigants to introduce all the evidence available as to the meaning of the contract. If the court is to go outside the writing, certainly the parties should be given full opportunity to present *all* of the relevant evidence available.

V. The majority assume many things not self-evident. They say: "We determine the rights of the parties from the premise they themselves created and tendered." The truth is the parties have not elected to present the question of the contract's interpretation beyond the writing itself. Upon that new question I feel defendant has not waived his right to file an an-

swer controverting some or all of the allegations which the majority hold were admitted by defendant. Actually, the motion of plaintiffs for summary judgment simply raised the question as to whether a judgment should be rendered on the basis of the affidavits presented.

Not long ago we reversed the granting of a summary judgment in a similar matter. In Eaton v. Downey, supra, 254 Iowa 573, 580, 118 N.W.2d 583, defendant claimed that a promissory note "was delivered conditionally only and the condition has not been performed." We remanded the case for a determination of that issue. Here defendant claimed in his affidavit the guaranty was conditional, and if the court is going beyond the clear meaning of the language of the instrument to find it was not, then I submit the defendant has stated a defense which requires the matter be remanded for the introduction of all relevant evidence on the meaning of the agreement, as was done in the Eaton v. Downey case. Also see Credit Industrial Co. v. Happel, Inc., 252 Iowa 213, 215, 106 N.W.2d 667; Cook, Iowa Rules of Civil Procedure, Volume 2, rule 237, Advisory Committee Comment, page 695.

. I feel this case can be affirmed on the judgment for the amounts due and payable December 10, 1962, and June 10, 1963, with 5 percent interest per annum from those dates, but would hold the trial court's judgment must be modified to provide defendant need not pay future semiannual dividends on June 10 and December 10 unless it appears the Mahaska Industries, Inc. has defaulted on its obligation to pay said dividends from available net profits and undivided surplus. I would modify and affirm.

HAYS and THOMPSON, JJ., join in this dissent.