UNITED STATES of America, Plaintiff,

v.

Ray J. SLEZAK and Lois A. Slezak, Husband and Wife; Eugene N. Arnburg and Connie L. Arnburg, Husband and Wife, Defendants.

No. C 79–1020.

United States District Court,
N. D. Iowa, E. D.

Dec. 2, 1981.

---

Robert L. Teig, Asst. U. S. Atty., Cedar Rapids, Iowa, for plaintiff.

Eli J. Wirtz, Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, Iowa, for defendants.

Barry S. Mueller, Postville, Iowa, for Arnburg's.

## ORDER

McMANUS, Chief Judge.

This matter is before the court upon plaintiff's resisted motion for summary judgment filed December 15, 1980. Granted.

This action was filed on July 24, 1979 by the United States of America on behalf of the Small Business Administration (SBA) alleging that defendants were guarantors of a note issued by Iowa Excel Corporation (Excel) to the SBA which is now in default and seeking a personal deficiency judgment against defendants in the sum of $38,338.92, plus interest. Discovery has now been closed and plaintiff has once again moved for summary judgment.

Summary judgment should not be entered unless the pleadings, depositions, answers to interrogatories, and admissions show that there is no genuine issue as to any material fact. FRCP 56(c); *see Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). It is an extreme remedy, not to be resorted to unless the moving party has established its right to a judgment with such clarity as to leave no room for controversy and unless the other party is not entitled to recover under any discernible circumstances. *Equal Employment Opportunity Comm. v. Liberty Loan Corp.*, 584 F.2d 853, 857 (8th Cir. 1978). In passing upon a motion for summary judgment, the court is required to view the facts in the light most favorable to the party opposing the motion. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970).

With this standard in mind the court considers the following facts to be undisputed at least for the purpose of this motion. On September 2, 1976 defendants Ray Slezak and Eugene N. Arnburg signed a note in the amount of $75,000.00 payable to the Iowa Business Development Credit Corporation on behalf of Excel. This note was secured by a personal guaranty signed by all defendants and by a security interest in the machinery, equipment, furniture, fixtures and inventory of Excel. The proceeds of the loan were properly disbursed to Excel, which commenced doing business. However, due to lawful government regulation the cost of doing business was increased and Excel went out of business and defaulted on the note. The security interest was foreclosed and the proceeds from the liquidation was applied to the loan balance. No claim is made that this procedure was not commercially reasonable. The SBA participated in the loan through its Guaranty loan program and through assignment from the Iowa Business Development Credit Corporation and is now owner and holder of the note and personal guaranty. The sum of $37,087.58 plus interest remains due on the note.[1]

The questions in this case arise from the defense raised by defendants that the collateral was impaired by plaintiff thereby releasing them from their guaranty. Specifically defendants contend that the ac-

---

1. While defendants apparently dispute this amount they have given no indication as to how it is in error or in any way countered the plaintiff's affidavit. In light of this, summary judgment is proper. *See e.g. Jones v. Halekulani Hotel Inc.*, 557 F.2d 1308 (9th Cir. 1977); *Wang v. Lake Maxinhall Estate*, 531 F.2d 832 (7th Cir. 1976); *Felix v. Young*, 536 F.2d 1126 (6th Cir. 1976).

tions of various regulatory agencies such as the Consumer Product Safety Commission, Federal Trade Commission and Department of Labor in promulgating regulations affecting the cellulose business in which Excel was engaged caused defendants to go out of business. No attack has been made by defendants on the legality of these regulations.

While these defenses, if valid, raise numerous factual issues, the threshold legal question appears to be whether, the passage of lawful regulations by an unrelated government agency which places a financial burden upon an existing business can be raised as a defense to an action by the SBA upon loan guaranties.

Initially, it seems clear that the questions raised are to be determined as a matter of federal law. *See e.g. Victory Highway Village, Inc. v. Weaver*, 634 F.2d 1099 (8th Cir. 1980); *United States v. Willis*, 593 F.2d 247 (6th Cir. 1979); *United States v. Beardslee*, 562 F.2d 1016 (6th Cir. 1977). It is equally clear that the starting point for determining the relative rights of the parties is the agreement itself. *See e.g., United States v. Outriggers, Inc.*, 549 F.2d 337 (5th Cir. 1977); *United States v. Proctor*, 504 F.2d 954 (5th Cir. 1974); *Miller v. Geerlings*, 256 Iowa 569, 128 N.W.2d 207 (1964). The loan guarantee provided in part:

> The Undersigned hereby unconditionally guarantees to Lender, its successors and assigns, the due and punctual payment when due, whether by acceleration or otherwise, in accordance with the terms thereof, of the principal of and interest on and all other sums payable,
>
> \*    \*    \*    \*    \*    \*
>
> . . . The Undersigned hereby grants to Lender full power, in its uncontrolled discretion and without notice to the undersigned, but subject to the provisions of any agreement between the Debtor or any other party and Lender at the time in force, to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:
>
> \*    \*    \*    \*    \*    \*

> (d) To consent to the substitution, exchange, or release of all or any part of the collateral, whether or not the collateral, if any, received by Lender upon any such substitution, exchange, or release shall be of the same or of a different character or value than the collateral surrendered by Lender:
>
> \*    \*    \*    \*    \*    \*
>
> The obligations of the Undersigned hereunder shall not be released, discharged or in any way affected, nor shall the Undersigned have any rights or course against Lender, by reason of any action Lender may take or omit to take under the foregoing powers.
>
> \*    \*    \*    \*    \*    \*
>
> The obligations of the Undersigned hereunder, and the rights of Lender in the collateral, shall not be released, discharged or in any way affected, nor shall the Undersigned have any rights against Lender . . . nor by reason of any deterioration, waste, or loss by fire, theft, or otherwise, of any of the collateral, unless such deterioration, waste, or loss be caused by the willful act or willful failure to act of Lender.

In light of the language of this agreement it is apparent that defendants have signed an unconditional guarantee giving plaintiff the right to proceed directly against them without regard to the collateral. *See e.g., United States v. Willis*, 593 F.2d 247, 254 (6th Cir. 1979); *Pavlantos v. GarouFalis*, 89 F.2d 203 (10th Cir. 1937). Further, while plaintiff may have had a duty to deal with the collateral in a commercially reasonable manner the agreement imposed no duties upon plaintiff prior to default. The agreement clearly waives whatever duties plaintiff may have had to protect defendants' subrogation interest in the collateral except where destruction was willful.

Here, assuming that plaintiff is responsible for destruction of the collateral it can in no way be said to be willful. Willful at the very least implies an intent to bring

**66**

about deterioration in the specific collateral. *United States v. Proctor*, 504 F.2d 954 (5th Cir. 1974); *United States v. Houff*, 202 F.Supp. 471 (D.C.Va.1962). Here defendants are complaining only of lawful regulation of an entire industry which increases the costs of doing business for all. Indeed, to accept defendants' position could have far reaching implications by making the government an insurer against adverse regulation. Clearly, in today's business world this is a risk of the business which cannot by any stretch of the imagination be regarded as unforeseen.

Likewise, the court can find no obligation on plaintiff's part to continue to loan a faltering business money. Hence, SBA's mere denial of a "non-physical" disaster loan to Excel is not a defense at least without some allegation of malfeasance.

Finally, the court is in agreement with plaintiff that these defenses are in the nature of a counterclaim and are barred by sovereign immunity. Defendants argue that where the United States institutes an action, the defendant may assert by way of recoupment any claim arising out of the same transaction or occurrence as the original claim in order to reduce or defeat the government's recovery. While this is true, defendants overlook the fact that their claims do not arise out of the same transaction or occurrence as plaintiff's claim. Plaintiff's claim is one sounding in contract while defendants' sounds in tort and involves the actions of agencies wholly separate from the SBA and in no way involving the guaranty agreement. Accordingly, the claims are barred. *Cf. Frederick v. United States*, 386 F.2d 481 (5th Cir. 1967).

It is

ORDERED

That plaintiff's motion for summary judgment is granted and the Clerk is directed to enter judgment against defendants in the sum of $37,087.58 plus interest to May 12, 1980 of $2,871.42 with daily interest of $11.075 after said date.