Ronald L. WILLIAMS and Rose L. Williams, Plaintiffs–Appellees,

v.

Randy R. CLARK, Teresa J. Clark, Charles D. Clark and Clara Margaret Clark, Defendants–Appellants.

Randy R. CLARK, Teresa J. Clark, Charles D. Clark and Clara Margaret Clark, Counterclaim Plaintiffs–Appellants,

v.

Ronald L. WILLIAMS and Rose L. Williams, Counterclaim Defendants–Appellees,

and

Marion S. Teclaw and Hakes Foods, Inc., an Iowa Corporation, Third–Party Defendants–Appellees.

No. 86–1014.

Court of Appeals of Iowa.

Oct. 28, 1987.

**248**

Thomas J. McCann of Foxhoven & McMann, Des Moines, for defendants-appellants.

Michael F. Mahoney and Jim P. Robbins of Donelson & Robbins, Boone, for plaintiffs-appellees.

David R. Danilson, Boone, as receiver.

Considered by OXBERGER, C.J., and SCHLEGEL and HAYDEN, JJ.

HAYDEN, Judge.

Defendants (guarantors), Charles and Margaret Clark, appeal the trial court's judgment for plaintiffs (sellers), Ronald and Rose Williams. Defendants assert the trial court erred in finding them liable since the actions of the purchasers, Randy and Teresa Clark, did not constitute an anticipatory breach of the contract and thus the guaranty provisions of the contract and lease were not triggered. If the purchasers' actions are deemed to be an anticipatory breach, defendants assert the guaranty was conditional and the conditions precedent to liability were not met. Defendants also assert the evidence at trial was sufficient to prove the allegation of fraudulent misrepresentation underlying their counterclaims for rescission and fraud and their third-party claim for fraud. We affirm.

In 1983, Randy and Teresa Clark executed an agreement for the purchase of a grocery business and lease of the property from the Williamses. Randy's parents, Charles and Margaret Clark, signed as guarantors.

The business did not prosper and on November 16, 1984, Randy sent Mr. and Mrs. Williams a letter which stated:

I have recently discovered that sales in the grocery store are not nearly as high as was warranted back when we signed the contracts on June 19, 1983, and that the financial information provided me at that time, was inaccurate. As a result, I have now concluded that the past sales

could not have approached the level as shown to me at the time of the sale. In addition, the store has operated at considerably less than I was led to believe. A recent evaluation of my current financial situation leads me to conclude that I am no longer able to keep the store operating. By this letter, I am tendering the store back to you; however, I will continue to operate for thirty days from the date of this letter, in an effort, to provide continuous operation of the business and to maintain goodwill. If you do not accept this tender offer within thirty days, I will consider this tender offer rejected. You can minimize your losses by continuing the operation of the store after that time. After you take over the business, we can negotiate a settlement that will restore us to the position we were in before we signed the contracts. Please contact me with your decision.

It is undisputed Charles and Margaret Clark were aware of the contents of this letter before it was sent.

The Williamses responded by having their attorney contact both Clark families. On November 26, 1984, he sent Randy and Teresa Clark the following letter:

Your letter of November 16, 1984, to Mr. and Mrs. Ronald L. Williams has been turned over to me for response.

A review of paragraph two of your letter leads me to the conclusion that you have made an anticipatory breach of your contract and lease with Mr. and Mrs. Williams. This breach of your contract and lease with the attempted tendering of the business back to Mr. and Mrs. Williams is not acceptable.

You are hereby notified that all sums due under the terms of your contract and your lease are now payable.

Also on November 26th, he sent Charles and Margaret Clark the following letter:

On November 16, 1984, your son, Randy R. Clark, sent a certified letter to Mr. and Mrs. Ronald L. Williams notifying them that he is tendering the grocery store business back to the Williams' on December 16, 1984. Randy's attempt to tender the store back to the Williams' is

an anticipatory breach of the contract and lease which were entered into on June 19, 1983.

This letter is being sent to you as guarantor's of Randy and Teresa's obligations under the terms of the contract and lease. If Randy and Teresa do not fulfill the terms of the contract and lease, the Williams' intend to look directly to the two of you for payment in addition to Randy and Teresa.

I should also advise you that the Williams' have no obligation to pursue Randy and Teresa prior to seeking to enforce the contract against the two of you. Please take notice and take whatever action you feel is appropriate under the circumstances.

On December 4, 1984, Mr. and Mrs. Williams filed a petition at law seeking to recover the balance due under the agreement, contending the letter from Randy Clark constituted an anticipatory breach of the contract. Randy and Teresa Clark were named as parties-defendants as principals; Charles and Margaret Clark were named as guarantors. On December 10, 1984, a receiver was appointed at the request of the Williamses and with the consent of all parties. He subsequently sold the inventory and liquidated the business by approximately January 7, 1985. All of the defendants brought a counterclaim and a third-party claim against a grocery supply business and one of its employees who had participated in the discussions leading to the agreement between the Clarks and the Williamses. These claims sought rescission of the contract and damages for fraud. The grocery business then counterclaimed against Randy and Teresa Clark for the amount due on an open account. Thereafter, Randy and Teresa filed for bankruptcy and were ultimately discharged.

**I. Anticipatory Breach.** The guarantors dispute the sellers' contention that Randy Clark's letter of November 16th constituted an anticipatory breach of the contract.

■ As stated in *Lane v. Crescent Beach Lodge & Resort, Inc.*, 199 N.W.2d 78, 82 (Iowa 1972):

> Anticipatory breach requires a definite and unequivocal repudiation of the contract. It is committed before the time for performance and is the outcome of words or acts evincing an intention to refuse performance in the future. It is not established by a negative attitude or one which indicates more negotiations are sought or that the party may finally perform. (Citations omitted.)

*Id.* A distinct declaration of an inability to perform presently may constitute a renunciation or repudiation. 17A C.J.S. *Contracts* § 472(2) (1963).

■ Randy Clark stated in his letter that he was "no longer able to keep the store operating" due to his financial situation and therefore he was "tendering the store back" to the Williamses. He then gave Mr. and Mrs. Williams thirty days to accept this "tender offer," after which it would be considered rejected. Guarantors assert the characterization by Randy of this tendering as an "offer" shows it was not a definite and unequivocal repudiation of the contract. However, Randy went on to state that the Williamses could minimize their "losses by continuing the operation of the store after that time"—i.e., after the thirty days during which he would continue to operate the store and the Williamses would decide whether to accept or reject his "tender offer." In short, Randy made it clear he was unable to continue operating the store and he would only continue to do so for thirty days while Mr. and Mrs. Williams decided whether to accept what was in essence an offer to rescind the contract. After that time, not only could he not continue operating the store, he would not do so. The trial court was correct in determining this constituted an anticipatory breach of the contract. This breach then triggered the guaranty provisions of the contract and lease.

**II. Guaranty.** The guaranty provisions in the purchase agreement and lease are essentially identical. The purchase agreement stated:

> 19. *Guarantor.* Charles D. Clark and Clara Margaret Clark signed this Agreement as Guarantor of the obligations of Randy R. Clark and Teresa J. Clark and assume full responsibility for the full and complete payment of the purchase price and lease payments. Seller grants to Guarantor the right to continue this Agreement in the event Purchaser in any way breaches or defaults in this Agreement. If Seller determines that Purchaser is breaching this Agreement, seller shall give written notice to both Purchaser and Guarantor of the alleged breach. Purchaser shall have the exclusive right to cure any breach during the ten-day period following the date of Sellers' notification and if Purchaser cures the breach, this Agreement shall continue as if Purchaser had not breached the Agreement at any time. If Purchaser does not cure the breach within the ten-day period and is in default in this Agreement, as set forth above, then Guarantor is given the exclusive right to cure the breach for a period of twenty (20) days after the expiration of Purchaser's ten-day cure period. If Guarantor cures the breach, Guarantor is granted the right to continue with this Agreement and shall receive all rights and obligations under the terms of said Agreement.

The guaranty provision in the lease stated:

> 16. (a) ...
>
> (b) Seller grants to Guarantor the right to continue this lease agreement in the event Purchaser in any way breaches or defaults in this lease. If Seller determines that Purchaser is breaching this lease, Seller shall give written notice to both Purchaser and Guarantor of the alleged breach. Purchaser shall have the exclusive right to cure any breach during a ten-day period after the giving of such notice. If Purchaser cures the breach, this lease shall continue as if Purchaser had not breached the lease agreement. If Purchaser does not cure the breach within the ten-day period and is in default in this lease, as set forth above, then Guarantor is given the exclusive right to cure the breach for a period of twenty (20) days after the expiration of Purchaser's ten-day cure period. If

Guarantor cures the breach, Guarantor shall be given the right to assume all rights and obligations under the terms of this lease agreement.

Generally there are two types of guaranty agreements: absolute guaranties and conditional guaranties. A guaranty is considered to be absolute "unless its terms import some condition precedent to the liability of the guarantor." *Preferred Investment Co. v. Westbrook*, 174 N.W.2d 391, 395 (Iowa 1970). In an absolute guaranty, liability is imposed upon the guarantor immediately upon default of the principle debtor regardless of whether the guarantor has received notice of the default. *Schaffer v. Acklin*, 205 Iowa 567, 570, 218 N.W. 286, 287 (1928).

The trial court held the guaranty was absolute since it stated that Charles and Margaret Clark assumed "full responsibility for the full and complete payment of the purchase price and lease payments." The court found no condition precedent to the liability of the guarantors in this language. The guarantors contend, however, the requirement of giving notice of default to them and the provisions regarding time periods during which any breach may be cured constitute conditions precedent to their becoming liable on the contract and lease. The guarantors assert they are not liable since this suit was commenced prior to the conclusion of the time periods for cure.

The guaranty does not specifically state when the guarantors become liable. Guaranty contracts are to be construed according to the intention of the parties. *Miller v. Geerlings*, 256 Iowa 569, 576, 128 N.W.2d 207, 211 (1964). This intention may be ascertained by examining the language employed and the circumstances under which the guaranty is given. *Buser v. Grande Avenue Land Co.*, 211 Iowa 659, 664, 234 N.W. 241, 244 (1931).

The guaranty in this case explicitly placed full responsibility for payment upon the guarantors; but it also provided the guarantors with an option regarding the discharge of that responsibility. In order to effectuate the option allowing the guarantors to continue the operation of the store upon the principals' default, the guarantors were to be provided with notice of the default. To the extent of this notice requirement, we agree the guaranty was conditional. We conclude, however, the time periods for cure were not intended to constitute conditions precedent to the guarantor's liability. The guarantors became liable upon receipt of notice of default, and they then could proceed to exercise their option to continue the operation of the store, subject to the time periods for cure. It is undisputed the guarantors received proper notice that Mr. and Mrs. Williams considered Randy Clark's letter to be an anticipatory breach.

We further note there was nothing at the time of default to "cure," in the sense of overdue payments, for example. The guarantors only option, other than paying the contract in full, was therefore to prepare to operate the store themselves. They have not suggested they were ever inclined to do so; in fact, they consented to the appointment of the receiver, which occurred before the time periods for cure had run. We find it rather disingenuous of the guarantors to rely on the failure of the time periods to run in order to avoid liability when they apparently had no inclination to exercise the option to operate the store provided by the time periods, anyway.

We conclude the liability of the guarantors was conditional upon the receipt of notice of the principals' default and that this condition was met.

**III. Rescission and Fraud.** The trial court found there was no false representation made concerning the status of the business. The court therefore ruled against the guarantors' counterclaims and third-party claim, which were premised upon the alleged false representation. We have examined the record and agree with the conclusion of the trial court.

AFFIRMED.

SNELL, J., takes no part.