FIDELITY SAVINGS BANK, appellant, v. WORMHOUDT LUMBER COMPANY of Ottumwa, appellee.

No. 49954.

(Reported in 104 N.W.2d 462)

1122

August 2, 1960.

Bannister & Bell, of Ottumwa, for appellant.

Bailey C. Webber, of Ottumwa, for appellee.

Thompson, J.—Plaintiff's pending suit is upon a written guaranty of payment of a promissory note in the original amount of $9400, executed payable to plaintiff by one F. L. Stufflebeam. The amount of the note and that it is past maturity are not controverted. At the time of its execution, the defendant guaranteed its payment, in these terms: "Endorsement Guarantee. To be paid in accord with contract as set out Wormhoudt Lumber Company of Ottumwa by H. S. Wormhoudt, President."

The note and guaranty agreement were executed and delivered on June 8, 1955. On the same date a contract, referred to in the record as Exhibit A, was executed by Stufflebeam, as

first party; the defendant Wormhoudt Lumber Company as second party; the plaintiff-bank as third party; and Ottumwa Better Built Homes, Inc., as fourth party. This contract is referred to in plaintiff's petition, and a copy attached. It provides that the third party, bank, shall make a loan of $12,500 to the first party, Stufflebeam, evidenced by two promissory notes, one in the amount of $3100, which is not involved in this controversy; the other the note here in litigation, in the sum of $9400. The total sum under the contract was to be paid over to the second party, defendant herein, who would thereupon release its mechanic's liens filed against certain building jobs in which it had sold material to Stufflebeam, the principal contractor. It was also provided: "Second Party promises and agrees that on the execution of said notes, Second Party will endorse and thereby guarantee payment of the one note for $9400." It is not denied that the money was paid over, received by the defendant, and the guaranty sued upon duly executed.

The contract further provides that Stufflebeam being at the time employed as general manager for fourth party, hereinafter referred to as Homes, which had undertaken to erect 25 houses in Konrad Addition to Ottumwa, he would be entitled to certain bonuses as each unit was completed; and these bonuses, to the amount of not more than $500 each, representing profits from the construction and sale of the homes, would be paid over as they matured in the proportion of 75% to second party, the defendant here, and 25% to third party, the plaintiff-bank. The amount thus paid was to be applied to the payment of the two notes above referred to.

The contract Exhibit A referred to another contract, a copy being also attached to the petition as Exhibit B. This agreement was between Stufflebeam as first party and Homes as second party, neither the plaintiff nor defendant being named therein. However, it is referred to in Exhibit A in these terms:

"WHEREAS, Fourth Party under contract with First Party is obligated to hold said bonus payments for the account of First Party, looking to the payment of various debts and obligations of First Party, including those due Second Party;

and"; and Exhibit A also makes reference to the provisions of Exhibit B when it says:

"5. Fourth Party covenants and agrees with First, Second and Third Party that it will in all respects cooperate with said parties in an effort to expeditiously compute the amount of bonus due First Party so as to make available for payment to Second and Third Party the sums to which they shall severally be entitled under the terms and provisions of this contract, to the end that the notes of First Party above specified shall be retired as promptly as is reasonably possible."

Exhibit B contains provisions concerning the bonuses to be paid by Homes to Stufflebeam; particularly that all pay rolls shall be approved by H. S. Wormhoudt (the president of defendant-company); the same is made to apply to bills for materials and charges for interest, accounting, inspection, abstract of title and other expenses. These clauses of Exhibit B are the substantial basis for the allegations of defendant's answer which make the fighting point in the issues submitted to us. The answer, after admitting the execution of the note, the endorsement guarantee, and the advancement of the moneys by the plaintiff, alleges that the chief executive officer of plaintiff, one Donald M. Rowe, was also the secretary-treasurer of Homes; that plaintiff knew of the provisions for checking and approval of the items of expense of construction by H. S. Wormhoudt, and "that plaintiff knew the obligation of F. L. Stufflebeam on the promissory note Exhibit 'C' [the note payment of which defendant guaranteed] was to be paid from profits derived from building operations contemplated in said contracts, Exhibits 'A' and 'B' respectively." It is further pleaded that the contracts Exhibits A and B were executed in one transaction (although Exhibit B is dated May 26, 1955). Further allegations are that plaintiff knew defendant would not have signed Exhibit A without being assured of control of expenditures as set out in Exhibit B; that plaintiff nevertheless wrongly disbursed or permitted to be disbursed funds from construction loans without the approval of H. S. Wormhoudt and thereby permitted funds from building operations to be diverted to other creditors and so were not applied to the payment of the promissory note

which defendant guaranteed; so plaintiff is estopped from claiming liability against defendant under its guaranty. In another paragraph of the answer it is pleaded that plaintiff *"wrongfully interfered* with the performance of the contracts Exhibits A and B by *causing* payments of construction money * * * without the prior approval of H. S. Wormhoudt" so that funds derived from construction loans were diverted to payment of other creditors and *"were misapplied by the plaintiff* to the detriment of this defendant." (Italics supplied.) The plaintiff moved to strike the allegations of the answer separately, and the answer as a whole, upon the grounds that they are an attempt to vary the provisions of a written instrument by parol evidence contradictory of its terms; and as to certain allegations that they are immaterial and irrelevant. The trial court denied the motion to strike in toto, and we granted leave to appeal. We have before us only the pleadings, motion to strike, and the court's ruling.

█ I. The parties have argued the question of whether and when a written instrument may be varied, added to or contradicted by parol testimony, at length. We think, however, that an equally important question concerns the law of guaranty. It is well settled that a contemporaneous agreement in writing, accepted with knowledge, is to be considered in connection with the original instrument. Allison Ford Sales v. Farmers State Bank, 249 Iowa 261, 264, 86 N.W.2d 896, 898, and authorities cited. Indeed, the plaintiff recognizes this rule, and has in its petition set out the contemporary contracts A and B. They aid in interpreting and arriving at the real meaning of the "Endorsement Guarantee" upon which the action is based.

█ █ But we think the parol-evidence rule forbids pleading or proof that the note in suit was to be paid solely from profits derived from building operations. Neither the note, the guaranty, or either A or B so state; and to permit this allegation would clearly be to allow the contract to be contradicted by parol. So with the pleading that plaintiff knew defendant would not have signed the contract Exhibit A, which provides in unqualified terms for the guaranty of the note by defendant,

unless assured of control of disbursements as provided by Exhibit B. This, also, would vary the writing by parol. The so-called parol-evidence rule is one of substantive law. The reason for the rule is that the parties have made their agreement, of which the written contract is evidence, and to permit additions or variances would be to change the terms of their agreement. This may not be done. City of Des Moines v. City of West Des Moines, 244 Iowa 310, 314, 315, 56 N.W.2d 904, 906. See also Rice v. Sioux City Memorial Park Cemetery, 245 Iowa 147, 161, 60 N.W.2d 110, 118; and Hills Savings Bank v. Hirt, 204 Iowa 940, 946, 947, 216 N.W. 281, 283, 284. Many other cases might be cited to the same effect. We think the trial court was in error in denying the motion to strike these and similar allegations of the answer.

II. We turn then to the questions involving the law of guaranty. As we have pointed out, the answer charges at one point that the plaintiff "permitted" funds which should have gone to payment of the note to be diverted to other creditors, without the approval of H. S. Wormhoudt; at other places that plaintiff "wrongfully interfered" with the performance of the contracts A and B by "causing" funds to be so diverted, and that such funds were "misapplied" by the plaintiff.

The allegations of the answer, so far as well pleaded, are taken as true for the purpose of this discussion. So we accept the allegation that the chief executive officer of the plaintiff was also secretary-treasurer of Homes. This would be sufficient to charge plaintiff with knowledge of the manner of disbursing funds. But the plaintiff is not a party to Exhibit B, although it had knowledge of it. Generally, the bank would not have charge of the disbursement of the funds, even though its officer, wearing another hat, did have such control through his position with Homes. It is the established rule that a guarantor is discharged from his obligation by any act on the part of the guarantee which increases the guarantor's risk or in any manner injures his rights or remedies. 38 C. J. S., Guaranty, section 67, pages 1228-1229. This principle is so well recognized that further citation is needless.

But we have held that the guarantee owes no affirmative

duty of diligence to the guarantor of payment. Central State Bank v. Ford, 194 Iowa 904, 906, 187 N.W. 476, 478; Schaffer v. Acklin, 205 Iowa 567, 572, 218 N.W. 286, 288; Davenport v. Mullins, 200 Iowa 836, 839, 205 N.W. 499, 500. In Fuller v. Tomlinson Bros., 58 Iowa 111, 112, 12 N.W. 127, 128, we said that even negligence of the guarantee does not discharge a guarantor; and this statement was quoted with approval in Schaffer v. Acklin, supra. So the allegations that plaintiff "permitted" the disbursement of the funds were immaterial and should have been stricken.

 But a different situation prevails when it is alleged that the guarantee did some affirmative act which diminished other security which might have been available for payment of the debt, or otherwise injured the guarantor in his rights and remedies. Such acts will discharge the latter pro tanto; that is, to the extent, but only to the extent, of the loss incurred. Central State Bank v. Ford, 181 Iowa 319, 325, 164 N.W. 754, 756; Hendryx v. Evans, 120 Iowa 310, 316, 94 N.W. 853, 855; Mingus v. Daugherty, 87 Iowa 56, 61, 54 N.W. 66, 67, 43 Am. St. Rep. 354; Basile v. California Packing Corp., 9 Cir., 25 F.2d 576, 578. Here we have allegations of something affirmative done by the plaintiff. It is charged it "wrongfully interfered with the performance of the contracts Exhibits A and B by 'causing payments' " without the approval of Wormhoudt; and that funds "were misapplied by the plaintiff." These allegations seem to charge plaintiff with a breach of an affirmative duty; or, in other words, that it had some control over the disbursements and diverted them. Without doubt, although we have held above that the contract may not be varied by pleading and proof that the bonus payments were to be the sole source of payment of the note, they were *one* source and if the plaintiff in any manner wrongfully and by some affirmative act prevented their application, the defendant is relieved on its endorsement to the extent of the loss so occasioned, as it may be proved.

It is our conclusion that plaintiff's motion to strike should have been granted, except for the allegations of affirmative acts set out in the immediately preceding paragraph. These state a defense to the extent loss may be proven.

1128

Affirmed in part, reversed in part and remanded for ruling in accordance with this opinion.

LARSON, C. J., and GARFIELD, GARRETT, HAYS, PETERSON, and THORNTON, JJ., concur.

OLIVER, J., not sitting.