THE MECHANICS NATIONAL BANK OF WORCESTER *vs.*
MAURICE SHEAR
(and a companion case[1]).

Worcester.   November 15, 1978. — March 21, 1979.

Present: KEVILLE, GOODMAN, & BROWN, JJ.

*Negotiable Instrument*, Indorsement, Accommodation, Waiver of payment. *Practice, Civil*, Admission of facts.

Three individuals who signed a promissory note as indorsers were jointly and severally liable for the debt represented by the note. [258-260]

Indorsers on a promissory note were foreclosed from denying an individual's authority to sign the note on behalf of a corporation as maker by their failure to make a specific denial in their pleadings. [260]

---

[1] Mechanics National Bank of Worcester *vs.* Hyman H. Silver, Richard H. Gens, and Heywood Nursing Home, Inc.

An agreement by an indorser on a promissory note to pay counsel fees incurred by a bank in bringing an action against two other indorsers on the note did not, in the circumstances, discharge the first indorser. [260-261]

Dismissal of an action on a promissory note because it was premature did not absolve the indorsers from liability in a subsequent action brought after the note had become due. [261-262]

CONTRACT. Writ in the Central District Court of Worcester dated June 5, 1974.

CIVIL ACTION commenced in the Superior Court on January 8, 1976.

Following removal of the contract action to the Superior Court, the cases were consolidated for trial and heard by *Beaudreau, J.*

*Sumner H. Woodrow* for Maurice Shear.

*James H. Barnhill* for the plaintiff.

*James A. Weisman* for Hyman H. Silver.

*Marshall M. Schribman* for Richard H. Gens.

GOODMAN, J. This is an appeal by the defendants Maurice Shear (Shear), Richard H. Gens (Gens), and Hyman H. Silver (Silver) from judgments in two actions (see fn. 1) establishing their liability (together with the liability of the defendant Heywood Nursing Home, Inc. [Heywood]), jointly and severally on a promissory note dated February 16, 1971, in the face amount of $90,000, payable to the plaintiff, Mechanics National Bank of Worcester (bank). The note is signed by Shear on behalf of Heywood as maker; the back is signed by Shear, Gens, and Silver. In the body of the note, every maker, indorser, and guarantor waived "presentment, demand, notice and protest" and agreed that "this note may be extended from time to time and that no such extension or other indulgence ... shall discharge or otherwise affect the liability of any such maker, endorser or guarantor." The case was heard, jury waived, and the judge issued "Corrected Findings, Rulings and Order for Judgment." The evidence is reported.

From the judge's findings, which we supplement from our own examination of the evidence (see *Blackwell* v. *E.M. Helides, Jr., Inc.*, 368 Mass. 225, 226 [1975]), the following appears: As a result of negotiations initiated by Shear in July, 1970, the bank made a loan of $100,000 to Heywood and received a note for that amount dated August 17, 1970, due in three months, signed by Shear on behalf of Heywood, and then signed on the back by Gens and Shear. The proceeds of the loan were deposited in the bank to Heywood's account. Before the loan was made, financial statements of Gens, Silver, and Shear were submitted to the bank. In addition, Gens submitted a favorable cash flow forecast for Heywood's operation. The bank also checked the credit of the defendants.[2]

Shortly before the note became due, Shear approached Brown (see fn. 2), and it was agreed that the note would be reduced by $10,000, and that a new three months' note would be written for $90,000. Shear signed the instrument on behalf of Heywood and obtained the signatures of Gens and Silver on the back. It was then sent to the bank with all the signatures; it was dated February 16, 1971. Also sent to the bank was a check for $10,000 and a check for the accrued interest on the $100,000 note. Neither note was secured by collateral. No part of the principal or interest has been paid on the $90,000 note.

The following month, in March of 1971, Shear told Brown that Gens might be misappropriating corporate funds and that a third mortgage on Heywood's nursing home might be foreclosed. Brown referred Shear to the bank's attorneys who, on March 19, 1971, brought a complaint in equity on behalf of the bank (hereinafter prior action) against both Gens and Silver "to Restrain Fraudulent Conveyances and to Reach and Apply." The case was

---

[2] Shear testified that Silver did not sign the note because he was in Florida when the loan was consummated. Wilfred Brown (Brown), the officer of the bank with whom the loan was negotiated, testified that, at the time, he felt that Gens' and Shear's signatures gave the bank sufficient security.

heard by a master, who filed a report. Thereafter the case came on to be heard by a judge, who ordered, on March 28, 1975, that the action be dismissed as premature, since it had been commenced before the note became due. Subsequently, on January 8, 1976, the bank brought an action on the note against Gens and Silver; previously, on June 5, 1974, the bank had brought an action on the note against Shear. These two actions were tried together and resulted in the judgments here being appealed. The principal contentions made by the defendants center on claims that Shear was without authority to sign on behalf of Heywood and that the prior action and the arrangements pursuant to which it was brought absolve the defendants of liability. We affirm the judgments and hold that the defendants are jointly and severally liable on the note.

From the note itself it is clear that the three individual defendants signed as indorsers. At the bottom of the instrument are the words, "Please endorse (over)"; and the note does not "clearly indicate[ ]" that the signatures were made in some other capacity. See § 3-402.[3] Further, the indorsements are in blank; and in such a case, if any necessary notice of discharge and protest has been waived, "every indorser engages that . . . he will pay the instrument according to its tenor at the time of his indorsement to the holder . . . ." § 3-414(1). The defendants are therefore obligated to "pay the instrument" (Official Comment 1 to § 3-414[4]) as written—as "set forth in the words and figures" (*Commonwealth* v. *Wright,* 1 Cush. 46, 65 [1848]) of the instrument "at the time of [their] in-

---

[3] Unless otherwise noted, all statutory references are to the Commercial Paper article of the Uniform Commercial Code, G. L. c. 106, §§ 3-101 et seq., inserted by St. 1957, c. 765, § 1.

[4] The official comments may be found with the Uniform Commercial Code reproduced in the Annotated Laws of Massachusetts (Michie/Law. Co-op.) and in the Massachusetts General Laws Annotated (West). See also 2 Uniform Laws Annotated, Uniform Commercial Code (Master ed. 1977).

dorsement. Thus if a person indorses an altered instrument he assumes liability as indorser on the instrument as altered." Official Comment 3 to § 3-414. In *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 561 (1976), the Supreme Judicial Court also concluded that a defendant who signed a note on the back was an indorser under § 3-402 and pointed out: "As an indorser, [the defendant] contracted to pay the instrument according to its tenor at the time he signed. G. L. c. 106, § 3-414. The note [as in our case] explicitly provides for a waiver of presentment, protest, or notice of dishonor or delay therein, and on its face makes this waiver applicable to indorsers, among others. . . . With this information alone before us, we consider it an inescapable conclusion that, as a matter of law, [the defendant] is liable to the bank for the *debt represented by the note*" (emphasis supplied).

This analysis is in accord with the former Negotiable Instruments Law (NIL), G. L. c. 107, § 89 (repealed by St. 1957, c. 765, § 2), which provided that "[e]very endorser who endorses without qualification warrants to all subsequent holders in due course: 1. The matters and things mentioned in subdivision[ ] one . . . of [§ 88]." Section 88 mentioned a warranty that the instrument is "in all respects what it purports to be." The liability under § 3-414 attaches to "all indorsers" whether or not for accommodation—"whether or not the indorser . . . received consideration for his indorsement." Official Comment 1 to § 3-414.[5] Further, the liability is joint and several among the three since each signed "in the same capacity" and as "part of the same transaction," each signing, as the trial judge found, before the note was returned to the bank. § 3-118(e), and Official Comment 6. *Zapp Natl. Bank* v. *Metropolitan Planning & Redevelopment Corp.*,

---

[5] If the defendants are accommodation indorsers—which we need not decide—their liability also arises under § 3-415. Since the bank took the instrument for value before it was due, "the accommodation party is liable in the capacity in which he has signed [i.e. as indorser] even though the taker knows of the accommodation." § 3-415(2).

308 Minn. 309, 313-315 (1976). See *Billingsley* v. *Kelly*, 261 Md. 116, 129 (1970).

The defendants' obligations on the note "according to its tenor" make irrelevant Silver's contention that the trial judge was clearly in error in finding that Shear was authorized to sign the note on behalf of Heywood. The defendants' liability does not depend on whether the signature is operative as Heywood's (see § 3-404[1]), but on the defendants' undertaking as indorsers under § 3-414. See *City Fuel Co.* v. *Brown*, 254 Mass. 605, 608 (1926); *Holton* v. *Rose*, 270 Mass. 267, 269-270 (1930).

Further, Silver and Gens are foreclosed from denying Shear's authority to sign the note on behalf of Heywood, for no such specific denial is found in their pleadings. Absent such a specific denial, § 3-307(1) provides that "each signature on an instrument is admitted." This, as Official Comment 1 to § 3-307 indicates, has application to claims of lack of authority. *Modern Free & Accepted Masons of the World* v. *Cliff M. Averett, Inc.*, 118 Ga. App. 641, 643 (1968). See *Auburn State Bank* v. *National Laundry Co.*, 289 Mass. 397, 398-399 (1935), and *Gibbs* v. *Lido of Worcester, Inc.*, 332 Mass. 426, 429-430 (1955), both holding that authority to sign a promissory note on behalf of a corporation was admitted under G. L. c. 231, § 29, now repealed by St. 1975, c. 377, § 77, and superseded by Mass.R.Civ.P. 9(a), 365 Mass. 751 (1974). This admission also forecloses various contentions made by Silver and Gens which depend on Shear's lack of authority to sign on behalf of Heywood.

Shear's primary contention is that he was released by the bank under an agreement that he would pay the bank's counsel fees[6] for bringing the prior action against Silver and Gens. However, the judge found that the bank had neither released nor discharged Shear and that he had agreed to pay the fees so that his individual exposure on the note might be reduced. At trial, both Brown and

---

[6] He was advised that the fee would be $2,000; he paid $1,000.

the bank's counsel testified that there had been no agreement that the bank would not sue Shear; and Shear himself had so testified during the hearing before the master in the prior action. Accordingly, we need not deal with the numerous contentions by the defendants premised both on Shear's having been released and on § 3-606, "Impairment of Recourse or of Collateral."

Nor does the dismissal of the prior action help the defendants, for the action was dismissed not on the merits but because it had been brought prematurely. *York* v. *Sullivan*, 369 Mass. 157, 164-165 (1975), and cases cited. We do not accept Gens' contention that by bringing the prior action prematurely the bank somehow cancelled Gens' liability on the note. This is obviously not a discharge in accordance with § 3-605, entitled "Cancellation and Renunciation." See *Everton* v. *Blair*, 99 Idaho 14, 16 (1978). And we have been shown no authority for the novel proposition which the defendant Gens—attempting to bring himself within § 3-601(2)—in effect, asserts: that a premature attempt to enforce a contract for the payment of money is a "repudiation" of that contract which discharges the obligation completely. Further, contrary to the defendants' argument, the delay in bringing both the action against Gens and Silver and the action against Shear does not absolve them from liability in view of the broad provision in the note that "[e]very ... endorser ... waives ... and consents that this note may be extended from time to time and that no such extension or other indulgence ... shall discharge or otherwise affect the liability of any such ... endorser." *Bay Natl. Bank & Trust Co.* v. *Mason*, 349 So. 2d 810, 811-812 (Fla. App. 1977). Moreover, mere delay is not the equivalent of an "agree-[ment] to suspend," which is required for discharge by § 3-606(1)(a) and which is absent in this case. We do not believe that § 3-606(1)(a) was meant to change the requirement of the NIL, c. 107, § 143(6), that an "agreement" to extend be effective if "binding upon the holder." See *Glover* v. *National Bank of Commerce*, 258 Ark. 771,

772 (1975), in which the court held that the phrase "agrees not to sue," also in § 3-606(1)(*a*), refers to "an enforceable contract." See generally *Seppala & Aho Constr. Co.* v. *Petersen,* 373 Mass. 316, 321-327 (1977).[7]

The cases are remanded to the Superior Court to determine the plaintiff's "reasonable attorneys' fees" on appeal as provided in the note and to modify the judgments accordingly. Costs shall be assessed against the defendants jointly and severally.

*So ordered.*

---

[7] We have examined all the defendants' contentions. Those that have not been answered explicitly or implicitly by this opinion have not been argued within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), or are so insubstantial as not to require discussion. We note Gens' objection to the exclusion—as immaterial and because of the lawyer-client privilege—of two letters from the bank's attorney to the bank dated November 14, 1975, and February 20, 1976. Gens' brief points to nothing in the letters which might have affected the result; and from our examination of the letters we conclude that if there was error in their exclusion it was harmless.