**FARMERS STATE BANK, GRAFTON, Iowa, Appellee,**

v.

**Glen HUEBNER, Appellant.**

No. 90–202.

Court of Appeals of Iowa.

June 25, 1991.

Ted Enabnit of Enabnit & Keen, P.C., Mason City, for appellant.

R. Michael Sweesy, Mason City, for appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and HAYDEN, JJ.

SCHLEGEL, Judge.

Defendant Glen Huebner appeals the judgment of the district court, sitting without a jury, finding him liable as a cosigner of a note to plaintiff Farmers State Bank of Grafton. Plaintiff sued to collect $70,620.30 plus interest and attorney fees for a note signed by Glen E. Walk and cosigned by defendant. We affirm.

(1)

The record shows that defendant Glen Huebner and Glen Walk had known each other since 1953 and were friends who farmed in the same area. At one time they had owned farm machinery together. Walk owned a small acreage and farmed 160 acres which he rented from Art Schultz. Farmers State Bank had filed a financing statement with the secretary of state on February 28, 1977, covering all of Walk's equipment and farm products located on the Schultz 160 acres. In January 1982 Walk had outstanding loans from Farmers State Bank totaling $41,500.

Aloise D. Bowers, president of the bank, informed Walk that the loans could not be renewed unless Walk provided additional security or a cosigner. On January 12, 1982, Walk executed a one-year promissory note (number 123.01) that renewed and consolidated the loans of $41,500 at an interest rate of 17.5 percent per year. Huebner cosigned the note, and both parties agree that Huebner was an accommodation party.[1] The note contained a pledge of securi-

---

**1.** Iowa Code § 554.3415(1) (1991) defines an      "accommodation party" as "one who signs the

ty substantially similar to that in the 1977 financing statement: "All equipment, all farm products, including but not limited to crops, livestock, supplies used of produce [sic] in farming operations, and contract rights and accounts and all proceeds." There was nothing in this promissory note referring to the location of the secured property. The parties dispute whether there was a discussion between Bowers and Huebner about security for the note, but Huebner admits that he did not read the note before signing it.

The note came due in January 1983 and remained unpaid, but the Farmers State Bank took no action on it until December 1983. The bank continued to make smaller loans to Walk that eventually totaled $21,-100 by the end of 1983. During this time, however, Walk made a number of payments totaling approximately $13,600 which were applied to the other notes. By December 1983 his total debt to the bank stood at $49,000. The entire principal and interest of the January 1982 note remained outstanding until December 30, 1983. The bank did not inform Huebner of these transactions, and Huebner did not inquire of either Walk or the bank about Walk's financial position or the status of the note.

In December 1983 Walk made arrangements to renew the January 1982 note. Again, the bank demanded additional security or a cosigner. On December 30, 1983, Walk executed a one-year $41,500 promissory note (again numbered 123.01) to the bank, this time at 14.5 percent per year. Huebner cosigned the renewal note, again as an accommodation party. This is the note on which the bank now seeks recovery against Huebner.

As with the previous execution, the parties dispute whether there was a discussion between Bowers and Huebner about security for the note, but Huebner admits that he did not read the note before signing it. Bowers testified that the form he used for the renewal note was different than the original consolidation note. Unlike the January 1982 form, the December 1983 form provides six options which the scrivener may check to customize the form. Section (e) of the security agreement grants an interest in the first five: inventory, equipment, farm products, accounts and other rights to payment, and general intangibles. The sixth option under section (e) is also checked, and that option states: "In addition to any property generally described above, the following Collateral [is pledged]: 160 acres in SW ¼ Section 32 Barton Twp. Worth County, Iowa." The description is of the land rented by Walk from Schultz. Bowers testified, without objection, that the description was inserted by mistake and was meant to describe the location of the personal property pledged.

On December 30 Walk also paid the $14,-266.34 interest accumulated on the January 1982 note. This appears to have been accomplished by two additional notes for $16,000 and $7,000 given by Walk to the bank on December 30. These two loans were secured by a mortgage on Walk's acreage. This brought Walk's total indebtedness to the bank to $72,000.

From the end of December 1983 through mid-June 1985, bank ledgers reveal that Walk gave another note for $6,200 and made payments of $14,468.99. Of those payments, only $1,600 interest and $500 principal were credited to the December 1983 renewed note. In June 1985 Walk

instrument in any capacity for the purpose of lending that party's name to another party to it." U.C.C. § 3–415 comment (1) (1987) states:
> Subsection (1) recognizes that an accommodation party is always a surety (which includes a guarantor), and it is his only distinguishing feature. He differs from other sureties only in that his liability is on the instrument and he is a surety for another party to it. His obligation is determined by the capacity in which he signs. An accommodation maker ... is bound on the instrument without any

resort to his principal.... The subsection recognizes the defenses of a surety in accordance with the provisions subjecting one not a holder in due course to all simple contract defenses, as well as his rights against his principal after payment....
U.C.C. § 3–415 comment (4) (1987) adds: "As a surety the accommodation party is not liable to the party accommodated; but he is otherwise liable on the instrument in the capacity in which he has signed."

sold the secured property located on the rented 160 acres for $13,999.71. Of those proceeds, $4,016.52 was applied to the principal of the renewed consolidation loan. There is no evidence in the record to show who (the bank or Walk) determined how the proceeds from the sale of the secured property—or any other payments—were to be applied to Walk's various obligations.

On the date of trial, November 21, 1989, the unpaid balance due on the note was $70,620.30 ($36,983.48 principal and $33,-636.82 interest). In April 1987 Walk gave a deed to the acreage in lieu of foreclosure, and apparently the bank canceled the two additional notes given on December 30. At some time not reflected in the record, Walk was discharged in bankruptcy.

Farmers State Bank sued Huebner for the principal and interest due on the renewed, consolidated note dated December 30, 1983. Huebner charged that he had been induced to sign the note through fraudulent representations that the note was fully secured and that the security included the 160 acres mentioned in the note. Huebner further charged that the bank had allowed the wasting of assets and had waived its entitlement to his guarantee. The district court rejected the defenses and found Huebner liable for $70,620.30 accumulated interest and principal and interest of $14.69 per day.

The case was tried in law; therefore, we review for the correction of errors at law. Iowa R.App.P. 4. The matter was tried to the court sitting without a jury, and the findings of fact have the effect of a special verdict. Iowa R.App. P. 4. We are bound by these findings of fact if supported by substantial evidence. Iowa R.App.P. 14(f)(1).

(2)

■ Huebner first challenges the trial court's consideration of parol evidence concerning Bowers' mistake in noting that the bank took a security interest in the rented 160 acres. The Iowa Supreme Court has stated:

The parol evidence rule is not a rule of evidence, but a rule of substantive law. Although extrinsic evidence may be ad-missible to explain the real meaning of the parties by the language used in a contract, the parol evidence rule forbids the use of extrinsic evidence to vary, add to, or subtract from a written agreement. The principle behind the rule is that

when the parties have discussed and agreed upon their obligations to each other and reduced those terms to writing, the writing, if clear and unambiguous, furnishes better and more definite evidence of what was undertaken by each party than the memory of man.... The rule rests upon a rational foundation of experience and policy and is essential to certainty and stability of written obligations. * * *

30 Am.Jur.2d *Evidence* § 1016, at 151–52 (1967).

*Montgomery Properties Corp. v. Economy Forms Corp.*, 305 N.W.2d 470, 475–76 (Iowa 1981) (citations and emphasis omitted).

The evidence clearly was extrinsic to the contract; however, we are not persuaded that it is governed by the parol evidence rule because neither party seeks to define the obligations undertaken. At issue was Huebner's affirmative defense that his signature was obtained through fraudulent representations. Plaintiff, by adducing this evidence, did not seek to vary, add to, or subtract from the written agreement. Rather, it sought to show that the alleged fraud was in fact a mistake. The Iowa Supreme Court has recognized since *Ring v. Ashworth*, 3 Iowa 452, 457 (1856), that parol evidence is admissible to show fraud or mistake. Parol evidence is admissible to prove that fraud induced the writing. *Lamasters v. Springer*, 251 Iowa 69, 73, 99 N.W.2d 300, 302 (1959) (citations omitted); *accord Production Credit Ass'n of the Midlands v. Ryan*, 441 N.W.2d 379, 383 (Iowa App.1989). We find nothing in the authorities to prevent plaintiff to introduce parol evidence to show the absence of fraud. Allowing such evidence would do nothing to undermine the principles set out by the supreme court. We therefore hold that the trial court did not err in considering the evidence.

### (3)

We next consider Huebner's fourth assignment of error under which he asserts that the trial court erred in failing to find that plaintiff had induced him to become a cosigner through fraudulent representations that the note was secured by real estate. As we have pointed out, in this law action we are bound by the district court's findings of fact if supported by substantial evidence. Iowa R.App.P. 14(f)(1). Defendant had the burden to prove fraud by showing "(1) representation; (2) falsity; (3) materiality; (4) scienter; (5) intent to deceive; (6) reliance; (7) resulting injury and damage." *First Nat'l Bank in Lenox v. Brown*, 181 N.W.2d 178, 181 (Iowa 1970) (citing *Hall v. Wright*, 261 Iowa 758, 766, 156 N.W.2d 661, 666 (1968)). Citing *Robinson v. Perpetual Services Corp.*, 412 N.W.2d 562 (Iowa 1987), the district court held that defendant had failed to meet his burden by clear, satisfactory, and convincing evidence.

Only Bowers, the bank president, and Huebner testified at trial and much rests on the credibility of the witnesses. Bowers testified that his conversations with Huebner during the execution of the notes were limited. Bowers testified that on neither occasion was there any discussion about the underlying security and on neither occasion did Huebner read the note he was signing. Bowers did not know whether Huebner believed that Walk owned the 160 acres described in the renewal note for the consolidated loans. Huebner testified that little was said on either occasion, and although he remembered little else about the conversations, Huebner recalled that Bowers had said both times that the note was safely secured by real estate. Huebner admitted that he did not know the contents of the notes when he signed them and that he never attempted to ascertain the status of the notes he had signed. Although the two bachelor farmers had known each other for thirty years, during which they had hunted and fished together and had even owned farm equipment together, Huebner testified that he did not know whether Walk owned the 160 acres he farmed.

From this evidence, the district court could properly have concluded that plaintiff had made no fraudulent representations about the note being secured by real estate. From the record—which consists only of the conflicting testimony of the two witnesses—the district court appears to have had doubts about the clear, satisfactory, and convincing nature of the evidence to show a representation, false or otherwise, much less evidence of scienter, intent, and reliance. We are not inclined to substitute our judgment for that of the district court, which was in a superior position to assess the disputed testimony and the credibility of the witnesses. We hold that the district court did not err in failing to find that the bank had made fraudulent representations.

### (4)

Huebner's second assignment of error is that the district court erred in failing to apply Iowa Code section 554.3606 to preclude the bank from relying on him as an accommodation maker of the note. Iowa Code section 554.3606, in relevant part, states:

**Impairment of recourse or of collateral.**

1. The holder discharges any party to the instrument to the extent that without such party's consent the holder

*a.* without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; or

*b.* unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom the party has a right of recourse.

In the only Iowa case concerning section 554.3606(1)(b), the Iowa Supreme Court held that the deceased accommodation par-

ty was discharged to the extent of the impairment that the payee-bank had caused by its negligent failure to perfect its security interest in a growing crop, which allowed another creditor to take priority. *In re Voelker*, 252 N.W.2d 400, 402 (Iowa 1977).

Huebner contends that he should be discharged under Iowa Code sections 554.-3601(1)(d) and 554.3606(1) because Farmers State Bank allowed the note to mature and took no action to enforce it. Huebner contends he should be discharged because the bank granted additional loans against the secured property. He also contends he should be discharged because the bank failed to apply proceeds from the sale of collateral to the December 1983 note. The district court specifically held that Huebner had failed to show "that any collateral given by Mr. Walk was impaired by any action of the plaintiff-bank as the holder of the note."

As general rule, so long as there is no bargain in fact, *see* Iowa Code § 554.-1201(3), to delay enforcement, *see, e.g., Lee Federal Credit Union v. Gussie*, 542 F.2d 887, 890 (4th Cir.1976), mere delay in enforcing a note will not release a surety. 1 J. White & R. Summers, *Uniform Commercial Code* § 13-15, at 664 (3d Practitioner's ed.1988) (citing *Mechanics Nat'l Bank v. Shear*, 7 Mass.App. 255, 386 N.E.2d 1299 (1979), and *Mitchell v. Ringson*, 169 Ga.App. 88, 311 S.E.2d 516 (1983)). Although it has indicated that "[i]t is not clear ... whether a passive failure or delay on the part of the payee will result in discharge of a comaker," Iowa Supreme Court in *American State Bank v. Leaver* held that "[a] *valid agreement* between the payee and the maker of a note to extend time for payment discharges any comaker who has not consented to the extension." 261 Iowa 124, 129, 153 N.W.2d 348, 351 (1967) (emphasis supplied). There is no evidence of an agreement to extend the time for payment of the note. We hold that plaintiff's delay in enforcement did not discharge defendant and subsection (a) of section 554.3606(1) provides no relief for defendant. *Id.; see also* U.C.C. § 3–606 comment (4) (1987) ("This section retains the right of the holder to release one party, or to postpone his time of payment, while expressly reserving rights against others.").

Turning to the issues of unjustifiable impairment of collateral, some courts have stated that "[i]mpairment is not limited to physical impairment, but includes conduct by the holder which diminishes the value of the collateral, or which makes it unavailable to the surety." *Federal Land Bank v. Taggart*, 31 Ohio St.3d 8, 12, 508 N.E.2d 152, 157 (1987). Other courts have held that because of a reference in Official Comment 5 of section 3–606 to the "reasonable care" standard in section 9–207 to define "unjustifiable," the subsection applies only to personal property held by the secured party. *See Commerce Union Bank v. May*, 503 S.W.2d 112, 116–17 (Tenn.1973). These cases serve to show that this is a highly fractured area of the law. *See* Annotation, *What Constitutes Unjustifiable Impairment of Collateral, Discharging Parties to Negotiable Instrument, Under UCC § 3–606(1)(b)*, 95 A.L.R.3d 962 (1979 & Supp.1990).

A similar case arose in Missouri. In dicta the Missouri Court of Appeals held,

When ... the collateral is pledged for the security of a specified debt, for which a guaranty has also been given by a surety, the majority rule is that the proceeds of the collateral cannot be first applied by the creditor to a debt not embraced by the pledge, without the consent of the surety.

*Citizens Bank v. Lair*, 687 S.W.2d 268, 272 (Mo.App.1985) (quoting *Security Trust & Sav. Bank v. June*, 38 Ariz. 513, 1 P.2d 970, 972 (1931)). In *Fidelity Savings Bank v. Wormhoudt Lumber Co.* the Iowa Supreme Court acknowledged the "established rule that the guarantor is discharged from his obligation by any act on the part of the guarantee which increases the guarantor's risk or in any manner injures his rights or remedies." 251 Iowa 1121, 1127, 104 N.W.2d 462, 466 (1960) (quoting 38 C.J.S. *Guaranty* § 67, at 1228–29)). We thus assume that the Iowa courts accept the broader view described by the Ohio

court in *Federal Land Bank v. Taggart* and the Missouri court in *Citizens Bank v. Lair.* Under this approach, it appears Huebner, as part of his defense, must prove that the holder-bank affirmatively diverted proceeds and other payments from the secured obligation to the other loans. *See Fidelity Sav. Bank,* 251 Iowa at 1127, 104 N.W.2d at 466. As we have already noted, however, there is nothing in the record to show that the bank affirmatively diverted proceeds from the collateral or other payments from the secured note sued upon.

Finally, we find that the note contains a provision that expressly states: "WAIVER: ... *Lender may* release any party or security, *make future loans to any party* or contractually change its relationship to or the obligation of any party *without waiving or affecting the obligation of any other party* to this Note." By this language, it appears that Huebner has waived any right to complain about the additional loans made by the bank to Walk. Therefore, we need address it no further. We hold that the district court did not err in refusing to discharge Huebner pursuant to Iowa Code section 554.3606.

(5)

■ Huebner urges that the trial court erred in finding that the various payments and proceeds received by the bank should have been applied to the December 1983 secured note. There is no evidence showing whether the payments were directed by Walk to satisfy specific debts. If the payments are undirected, a creditor generally is at liberty to apply the debtor's payment to any debt owed. *Lumber Supply Inc. v. Hull,* 158 N.W.2d 667, 669 (Iowa 1968). Moreover, Iowa courts follow the rule that a co-obligor who has no ownership interest in the collateral has no complaint against the creditor-bank when the principal debtor acquiesces in the disposition of funds turned over to the bank. *American Sav. Bank v. Waschkat,* 423 N.W.2d 202, 206 (Iowa 1988). Huebner's claim, therefore, is without merit, and the trial court did not err in requiring the bank to apply payments to the secured indebtedness.

(6)

We hold that the district court did not err in considering parol evidence or in finding that plaintiff Farmers State Bank had not fraudulently induced defendant Huebner to cosign the promissory note sued upon. We further hold that the district court did not err in refusing to discharge defendant pursuant to Iowa Code section 554.3606 or in refusing to apply various payments to satisfy the secured debt.

AFFIRMED.