# IN THE COURT OF APPEALS OF IOWA

No. 18-1145
Filed March 4, 2020


**IOWA FARM BUREAU FEDERATION, an Iowa Non-Profit Corporation,**
 Plaintiff/Counterclaim Defendant-Appellee,

**vs.**

**DADEN GROUP, INC., an Iowa Corporation; DANA RUPE, individually; and WILLIAM GANSEN, Individually,**
 Defendants/Counterclaim Plaintiffs-Appellants.
_____

**DADEN GROUP, INC., DANA RUPE,
and WILLIAM GANSEN,**
 Third-Party Plaintiffs-Appellants,

**vs.**

**ADAM KOPPES,**
 Third-Party Defendant-Appellee.
_____


Appeal from the Iowa District Court for Linn County, Christopher L. Bruns,

Judge.


Daden Group, Dana Rupe, and William Gansen appeal the findings of the

district court that a subrogation agreement was enforceable, a company and its

principals waived certain defenses, and a director of the company did not breach

a fiduciary duty.  **AFFIRMED.**

Kate B. Mitchell and Eric W. Johnson of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellants.

Jeffrey A. Stone, Roger W. Stone, and Gail Brashers-Krug of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellee.

Heard by Vaitheswaran, P.J., Mullins, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**VAITHESWARAN, Presiding Judge.**

We must decide whether a subrogation agreement was enforceable, whether a company and its principals waived certain defenses, and whether a director of the company breached a fiduciary duty.

## I.    *Background Facts and Proceedings*

A privately held sports and footwear company known as Daden Group, obtained a business loan from First American Bank.  The loan agreement was signed by Daden's director, William James Gansen, and its president, Dana Rupe. The bank took a security interest in "all of [Daden Group's] assets" and Gansen and Rupe executed individual guaranty agreements in favor of the bank.

Iowa Farm Bureau Federation ("Farm Bureau") was a large investor in Daden Group.  Its investment manager, Adam Koppes, as well as a member of one of Farm Bureau's investment funds[1] held two of the five seats on Daden Group's board of directors.  Farm Bureau had an existing relationship with First American Bank, which was the repository of its wealth management accounts.

Like Gansen and Rupe, Farm Bureau executed a "limited continuing payment guaranty" in favor of First American Bank.  Under the guaranty agreement, Farm Bureau "unconditionally, absolutely, and irrevocably guarantee[d] to [First American Bank] the full and prompt payment and performance when due . . . of all Obligations of [Daden Group] to the [bank]."  Farm Bureau's exposure under the agreement was $4 million.  According to Farm Bureau's general counsel, the wealth management accounts served as "[s]ecurity

---

[1] According to Farm Bureau's general counsel, Farm Bureau was the general partner in the "Rural Vitality Fund."

for this [g]uaranty." Documents indicated the accounts also served as security for the underlying loan.

As consideration for Farm Bureau's guarantee, Daden Group agreed to pay Farm Bureau fees totaling "approximately $504,000." Daden Group paid $75,000 toward the obligation. Daden Group also made the following concession to Farm Bureau: "In the event that [Farm Bureau] is required to make payment to First American Bank, or any third party, in fulfillment of the Guaranty, [Daden Group] covenants and agrees that it shall repay [Farm Bureau] any such amounts paid by [Farm Bureau.]"

Daden Group defaulted on its loan. In the words of Koppes, the company was "under water," meaning that "its [l]iabilities exceeded assets." Farm Bureau agreed to repay the loan. It executed a subrogation agreement with First American Bank under which it would be "fully subrogated to the rights of" First American Bank "upon payment of the indebtedness."[2]

After paying off Daden Group's loan, Farm Bureau sued Daden Group, Gansen, and Rupe. Farm Bureau raised several claims and demanded "judgment against the defendants together with interest, attorney's fees, expenses, and costs." The defendants filed counterclaims and a third-party claim against Koppes for breach of fiduciary duty. Following trial, the district court ruled in favor of Farm Bureau, entering judgment against Daden Group, Gansen, and Rupe for $3,893.081.14 with interest and granting Farm Bureau other relief. The court

---

[2] Farm Bureau's general counsel testified Farm Bureau "agreed to provide the funds immediately in cash in exchange for executing the [subrogation] agreement."

denied Daden Group's counterclaim for breach of fiduciary duty against Koppes and his employer, Farm Bureau.

On appeal, Daden Group, Gansen, and Rupe (collectively "Daden"), argue (A) the subrogation agreement between Farm Bureau and First American Bank was unenforceable; (B) Farm Bureau was not a subsurety, as the district court found, (C) the district court should have recognized a claim of lender liability against Farm Bureau; and (D) the district court erred in denying the claim against Farm Bureau and its investment manager for breach of fiduciary duty.

## II. Analysis

### A. Subrogation Agreement

The subrogation agreement between Farm Bureau and First American Bank recited that "for . . . good and valuable consideration, the receipt and sufficiency of which the parties acknowledge," Farm Bureau would pay the bank "an amount equal to the amount of [Daden's] indebtedness" to the bank. The agreement further provided that "upon payment of the [i]ndebtedness . . . [Farm Bureau would] be fully subrogated to the rights of [the bank] pursuant to [the] Loan Documents to the maximum extent provided by applicable law." The agreement was one of the bases of Farm Bureau's claim for money judgment against Daden.

The district court addressed Farm Bureau's subrogation claim as follows: (1) there was consideration for the subrogation agreement; (2) the defendants executed waivers and acknowledgements indicating they "always intended" to be "held liable for the full amount of the indebtedness regardless of whether [Farm Bureau] had paid [First American Bank] on its guarantee"; (3) "[b]ecause [Farm Bureau] . . . successfully stepped into [First American Bank's] shoes, it [could]

enforce those waivers and acknowledgments"; and, accordingly, (4) the defendants were "jointly and severally liable to [Farm Bureau] for the full amount of the indebtedness."

Daden contends the subrogation agreement was unenforceable because "[o]nce [Farm Bureau] paid off [First American Bank] in full, [the bank] had no remaining rights to which [Farm Bureau] could be 'subrogated.'" Farm Bureau responds that the argument is "fundamentally at odds with the basic tenets of subrogation law," which "typically" afford subrogation rights when a person has "satisfied an obligation that arguably should have been satisfied by someone else." Farm Bureau is correct.

Subrogation "means to substitute or put in place of another." *Allied Mut. Ins. Co. v. Heiken*, 675 N.W.2d 820, 824 n.1 (Iowa 2004) (citing 4 Rowland H. Long, *The Law of Liability Insurance* § 23:01, at 23–2 (1998)). The entity that is "substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities." *Kent v. Bailey*, 164 N.W. 852, 853 (Iowa 1917). Farm Bureau's discharge of Daden's obligation to First American Bank allowed Farm Bureau to pursue its subrogation rights against Daden. *Id.* (stating subrogation "has been styled a legal fiction whereby an obligation which has been discharged by a third person is treated as still subsisting for his benefit, so that by means thereof one creditor is substituted to the rights, remedies, and securities of another"); *see also Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 743 n.7 (Iowa 2009) ("[A] guarantor is eligible for subrogation only when the underlying obligation to the creditor has been fully satisfied, regardless of any limit on the amount of debt the guarantor agreed to pay."); *Hills Bank & Tr. Co. v. Converse*,

772 N.W.2d 764, 772 (Iowa 2009) (adopting Restatement (Third) of Suretyship & Guaranty § 22 (1996)); Restatement (Third) of Suretyship & Guaranty § 22(1)(b) (1996) (stating generally "when the principal obligor is charged with notice of the secondary obligation it is the duty of the principal obligor to reimburse the secondary obligor to the extent that the secondary obligor: . . . makes a settlement with the obligee that discharges the principal obligor, in whole or part, with respect to the underlying obligation").  By the terms of the subrogation agreement, Farm Bureau succeeded to the bank's rights.  Daden's arguments to the contrary are unavailing.  We conclude the district court did not err in finding the subrogation agreement enforceable.  *See NevadaCare*, *Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010) ("A breach-of-contract claim tried at law to the district court is reviewed by us for correction of errors at law.").

### B.    *Subsurety*

In addressing Daden's argument that the subrogation agreement was unenforceable, the district court stated the outcome dictated by the agreement was "consistent with the law of surety . . . because [Farm Bureau] was a subsurety and Gansen and Rupe were principal sureties."  Daden takes issue with the finding.

We need not address the merits of Daden's surety argument because Gansen's and Rupe's guaranty agreements expressly waived "all defenses of suretyship."  As discussed below, we find the waiver enforceable.

### C.    *Lender Liability*

Daden filed a counterclaim against Farm Bureau alleging "[t]o the extent [Farm Bureau] asserts that it has been subrogated to the rights of [First American Bank] under the Subrogation Agreement . . . , [Farm Bureau] is subject to the

obligations of the lender to the same extent as was [First American Bank]." Daden further alleged Farm Bureau breached its obligation not to increase Daden's risk or "undermine the Guarantors' remedies by releasing the collateral secured by the [Farm Bureau] Security Agreement." The collateral Daden referenced were Farm Bureau's wealth management accounts at First American Bank.

The district court found that the wealth management accounts secured Farm Bureau's guaranty agreement rather than the underlying loan. Based on this finding, the court concluded, "Whether the collateral for the guarantee could be released was a matter solely between [Farm Bureau] and [First American Bank]" and Daden's lender liability claim lacked a factual basis. The court further concluded that waivers in the loan documents executed by Daden and the bank allowed the bank to "release, impair, sell or otherwise dispose of any security or collateral" and the waivers were "sufficient to preclude" the lender liability claim.

As noted at the outset, the record is conflicting on whether the wealth management accounts served as security for Farm Bureau's guaranty agreement with the bank or whether they served as security for the underlying loan. We need not resolve the conflict because, whatever the accounts secured, Daden waived its right to challenge how the accounts were handled. Specifically, the "commercial line of credit agreement and note" executed by Gansen and Rupe on behalf of Daden stated Daden "waive[d] . . . any . . . notice and defense due to . . . any substitution or release of collateral." The same language appeared in the "commercial promissory note." And Gansen and Rupe individually waived the bank's "failure to protect, preserve, or resort to any collateral" and "any defense that could be asserted by Borrower, including defenses arising out of . . . lender

liability." They also waived "any and all rights, benefits, and defenses . . . that might operate . . . to limit Guarantor's liability under, or the enforcement of, this Guaranty."

The waivers were enforceable. *See Farmers State Bank*, *Grafton v. Huebner*, 475 N.W.2d 640, 646 (Iowa 1991) (enforcing waiver language in a note and stating party "waived any right to complain"); *Palo Sav. Bank v. Sparrgrove*, No. 02-1234, 2004 WL 57466, at *2 (Iowa Ct. App. Jan. 14, 2004) (concluding the defendant "waived any claims or defense based on the Bank's application of the sale proceeds"). Accordingly, we conclude the district court did not err in granting judgment in favor of Farm Bureau on Daden's counterclaim based on lender liability.

### D. Breach of Fiduciary Duty

Daden filed a counterclaim alleging Farm Bureau's investment manager Adam Koppes breached a fiduciary duty to Daden when he served on its Board of Directors and Farm Bureau was vicariously liable for his actions. Following trial, the district court denied the counterclaim, finding no breach or, alternatively, no causal connection between a breach and damages.

On appeal, Daden insists Koppes "was not looking out for the interests of Daden and its shareholders, but rather, for the interests of [Farm Bureau]." Farm Bureau responds by pointing to the district court's findings that Daden's evidence lacked credibility. Both sides agree our review is de novo. *See* Iowa R. App. P. 6.907; *Weltzin v. Nail*, 618 N.W.2d 293, 300 (Iowa 2000) ("Money damages to remedy the corporation are not uncommon in derivative suits—yet the case remains in equity."); *cf. Westco Agronomy Co. v. Wollesen*, 909 N.W.2d 212, 226

(Iowa 2017) (noting breach-of-fiduciary-duty claim for which damages were sought was a legal claim).

The statutory standards of conduct for directors are as follows: "1. Each member of the board of directors, when discharging the duties of a director, shall act in conformity with all of the following: a. In good faith.  b. In a manner the director reasonably believes to be in the best interests of the corporation."  Iowa Code § 490.830(1) (2017).  These obligations have been described as a fiduciary duty owing to a company and its shareholders.  *Cookies Food Prods., Inc. v. Lakes Warehouse Distrib., Inc.*, 430 N.W.2d 447, 451 (Iowa 1988); *cf. Hanrahan v. Kruidenier*, 473 N.W.2d 184, 186 (Iowa 1991) (characterizing the statutory standard as "the business judgment rule," and stating "[w]hen directors act in good faith in making a business decision, when the decision is reasonably prudent, and when the directors believe it to be in the corporate interest, there can be no liability").

Koppes, as a member of Daden's board, owed a fiduciary duty to Daden. *See* Iowa Code § 490.830(1); *Cookies*, 430 N.W.2d at 451.[3]  The key question is whether he breached that duty.  Our de novo review of the record discloses the following pertinent facts.

---

[3] At trial, Farm Bureau appeared to argue Koppes owed no fiduciary duty to Daden because Daden was insolvent.  Farm Bureau abandoned the argument on appeal. *Cf. Boyd v. Boyd & Boyd, Inc.*, 386 N.W.2d 540, 542 (Iowa Ct. App. 1986) ("Iowa allows an insolvent corporation to prefer its own directors or other officers if they are bona fide creditors and if the preference is given in return for a contemporaneous loan or advance to the corporation. . . .  In other words, Iowa prohibits preferences to corporate directors granted to satisfy preexisting debts.").

Gansen and Rupe had an exclusive sales relationship with their footwear supplier, Caleres. When they learned Caleres was selling product to other vendors, they stopped paying Caleres. In time, Daden discussed a proposed "debt swap" with Caleres to resolve their differences. Rupe testified that, under the "two-for-one swap," Caleres was "willing to forgive a dollar of debt" for every dollar paid down by Daden. She and Gansen "were excited and interested" in the proposal, but they "need[ed] cash" to implement the agreement. They discussed the proposal with Koppes. According to Rupe, "The idea fell flat with him." Gansen similarly testified Koppes "slammed the door shut" on the proposal. Nonetheless, Gansen and Rupe brought the proposal to Daden's board. Koppes and the other Farm Bureau-affiliated board member rejected it. Rupe believed the remaining three members of the board could not override the two votes.

An amendment to the articles of incorporation supports Rupe's belief that a majority of the board members may have had difficulty countermanding the minority position. But, even if Koppes understood he could unilaterally block the swap proposal, his decision to do so did not violate his fiduciary duty to Daden. Rupe admitted the swap required an infusion of cash by Daden. Rupe conceded Daden was experiencing financial difficulties at the time, and she also conceded Farm Bureau had the right to elect against injecting additional money. Although she maintained she and Gansen could have invested their own funds or obtained funding from other sources but for Koppes' objection, she acknowledged those "options were not explored."

Even if we assume Koppes was the person who stymied pursuit of other funding sources as Rupe maintained, there is scant evidence to suggest he did so

to harm Daden. To the contrary, the record suggests Koppes was aware of Daden's financial difficulties and he determined an additional infusion of cash by Daden would exacerbate those difficulties. *See Dennison v. Mediacomm, Inc.*, No. 05-0308, 2006 WL 1627998, at *4 (Iowa Ct. App. June 14, 2006) (noting "the company's long-term prospects were bleak"); *Kelly v. Englehart Corp.*, No. 1-241, 2001 WL 855600, at *7–8 (Iowa Ct. App. July 31, 2001) (noting "a general downturn" in a company's business operations did not establish self-dealing). Notably, Rupe agreed to accept Koppes' assistance in negotiations with Caleres, after it became clear Rupe and Gansen had hit a dead end. Contrary to the assertions of Rupe and Gansen, Koppes testified his goal was not to subvert a deal with Caleres but to "try[] to keep the relationship [with Caleres] intact." He noted that Daden had "a bunch of inventory" and "keeping the relationship intact in some way, shape or form would have allowed the company to continue to sell" that inventory. He did not believe he undermined Rupe and Gansen in his discussions with Caleres, and he denied telling Caleres that they were out of the company and the creditors were now in control, as Rupe and Gansen claimed.

The district court afforded Koppes' testimony more credibility than the testimony of Rupe and Gansen. We give weight to the credibility finding, in light of the court's first-hand ability to assess demeanor, notwithstanding Koppes' imprecise recollection of certain events. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 38 (Iowa 2015) (Waterman, J., dissenting) (noting the difficulty of assessing credibility from a cold transcript).

At the end of the day, Koppes made a business decision to work on salvaging the relationship with Caleres without throwing good money after bad. As

Farm Bureau stated in its trial brief, his interest aligned with the interests of Rupe and Gansen insofar as all three wanted Daden to prosper. We agree with the district court that the decision was made in good faith and Koppes reasonably believed he was acting in Daden's best interests. We conclude Koppes did not breach his fiduciary duty to Daden and the district court acted equitably in denying relief on Daden's counterclaim.

We affirm the district court's judgment in favor of Farm Bureau.

**AFFIRMED.**